UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ENERGY POLICY ASSOCIATES, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-0298 (TJK) |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

*MATTHEW M. GRAVES*
United States Attorney

*BRIAN P. HUDAK*
Chief, Civil Division

*STEPHEN DEGENARO*
Assistant United States Attorney

*MICHAEL BACHARACH*
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia

January 27, 2023

## TABLE OF CONTENTS

**BACKGROUND** ................................................................................................................ 3

**LEGAL STANDARDS** .................................................................................................... 5

**ARGUMENT** ................................................................................................................... 7

I.   **DEFENDANT PROPERLY WITHHELD INFORMATION UNDER EXEMPTION 5** . 8

    **A.**   **The Withheld Information Is Both Intra-Agency and Inter-Agency Communications Protected by Exemption 5** ................................................... 9

    **B.**   **The Withheld Information Is Covered by the Deliberative Process Privilege as Predecisional Materials** .......................................................................... 10

    **C.**   **The Withheld Information Is Covered by the Deliberative Process Privilege as Deliberative Materials** ................................................................................ 14

    **D.**   **The Agency Has Established that Disclosure of the Withheld Records Will Cause Foreseeable Harm to Interests Protected by Exemption 5** ................................. 18

**II.  DEFENDANT PRODUCED ALL SEGREGABLE INFORMATION** .......................... 21

**CONCLUSION** ................................................................................................................ 22

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Pages**

*Advancement Project v. U.S. Dep't of Homeland Sec.*,
   549 F. Supp. 3d 128 (D.D.C. 2021) ................................................................. 17-18

*Agrama v. IRS*,
   282 F. Supp. 3d 264 (D.D.C. 2017) .................................................................. 21

*Am. Ctr. For Law & Justice v. U.S. Dep't of Justice*
   325 F. Supp. 3d 162, 168 (D.D.C. 2018) ............................................................. 1

*Amiri v. Nat'l Sci. Found., No. 1:20-CV-02006*,
   2021 WL 4438910 (D.D.C. Sept. 28, 2021) .................................. 17, 19-20, 20, 21

*Ancient Coin Collectors Guild v. United States. Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) ..................................................... 15-16, 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ......................................................................... 4, 5

*Boyd v. Crim. Div. of U.S. Dep't of Just.*,
   475 F.3d 381 (D.C. Cir. 2007) ....................................................................... 21

*Brayton v. Off. of U.S. Trade Rep.*,
   641 F.3d 521 (D.C. Cir. 2011) ......................................................................... 5

*Cause of Action Inst. v. Exp.-Imp. Bank of the United States*,
   521 F. Supp. 3d 64 (D.D.C. 2021) .................................................................. 13

*Cause of Action Inst. v. U.S. Dep't of Com.*,
   513 F. Supp. 3d 116 (D.D.C. 2021) ................................................................. 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ....................................................................................... 4

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) .......................................................... 11, 20-21

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) .................................................................... 5

*Dep't of Justice v. Tax Analysts*,

i

492 U.S. 136–51 (1989) ................................................................................... 6

*Donatos Sarras v. United States Dep't of Justice*,
No. 19-0861, 2021 WL 9909763 (D.D.C. Aug. 5, 2021) ...................................... 19

*Elec. Frontier Found. v. U.S. Dep't of Justice*,
739 F.3d 1, 8 (D.C. Cir. 2014)............................................................................. 11

*Emuwa v. U.S. Dep't of Homeland Sec., No. 1:20-CV-01756*
2022 WL 1451430 (D.D.C. May 9, 2022) ........................................................... 19

*Government." Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) .................................................................................. 8, 9, 10

*Greenspan v. Bd. of Governors of Fed. Rsrv. Sys., No. 1:21-CV-01968*,
2022 WL 17356879 (D.D.C. Dec. 1, 2022) ................................................... 17, 21

*Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*,
692 F.2d 770 (D.C. Cir. 1981) ........................................................................... 6

*Renegotiation Bd. v Grumman Aircraft*,
421 U.S. 168, 184 (1975). .............................................................................. 15

*Heggestad v. U.S. Dep't of Justice*,
182 F. Supp. 2d 1 (D.D.C. 2000) ....................................................................... 13

*Jud. Watch, Inc. v. United States Dep't of Def.*,
847 F.3d 735 (D.C. Cir. 2017) ........................................................................... 12

*Judicial Watch*,
20 F.4th ................................................................................................. 14, 16

*Judicial Watch, Inc. v. Dep't of State*,
306 F. Supp. 3d 97 (D.D.C. 2018) ....................................................................... 8

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) ............................................................................ 5

*Leopold v. Dep't of Just., Civ. A. No. 19-2796*
2021 WL 3128866 (D.D.C. July 23, 2021) ........................................................ 22

*Machado Amadis v. U.S. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ....................................................................... 9, 10

*McGehee v. Cent. Intelligence Agency*,

697 F.2d 1095 (D.C. Cir. 1983) ............................................................. 5

*Mead Data Cent., Inc. v. Dep't of Air Force,*
566 F.2d 242 (D.C. Cir. 1977) ......................................................... 6, 21

*Media Research Ctr. v. Dep't of Justice,*
818 F. Supp. 2d 131 (D.D.C. 2011) ...................................................... 5

*Michigan v. United States Envtl. Protect. Agency,*
576 U.S. 743 (2015) .......................................................................... 20

*Military Audit Project v. Casey,*
656 F.2d 724 (D.C. Cir. 1981) ............................................................. 5

*Milner v. Dep't of Navy,*
562 U.S. 562 (2011) ............................................................................ 8

*Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec,*
2022 WL 4534730, at *4 (D.D.C. Sept. 28, 2022) .............................. 13

*Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n,*
216 F.3d 1180 (D.C. Cir. 2000) ........................................................... 6

*Nat'l Treasury Emps. Union v. U.S. Customs Serv.,*
802 F.2d 525 (D.C. Cir. 1986) ............................................................. 6

*NLRB v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975) ................................................................. 8, 10, 11

*Perry v. Block,*
684 F.2d 121 (D.C. Cir. 1982) ............................................................. 7

*Petroleum Info. Corp. v. U.S. Dep't of Interior,*
976 F.2d 1429 (D.C. Cir. 1992) ..................................................... 10-11

*Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.,*
575 F. Supp. 3d 34–52 (D.D.C. 2021) ............................................... 20

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation,*
3 F.4th 350 (2021) ........................................ 14, 16, 17, 18, 19, 20

*SafeCard Servs., Inc. v. Sec. and Exch. Comm'n,*
926 F.2d 1197 (D.C. Cir. 1991) .............................................. 5-6, 11, 19

*Schlefer v. United States,*

702 F.2d 233 (D.C.Cir.1983) ........................................................................ 16

*Senate of the Commonwealth of Puerto,*
823 F.2d ...................................................................................................... 16

*Shapiro v. United States Dep't of Justice,*
893 F.3d 796 (D.C. Cir. 2018) ........................................................................ 1

*Spirko v. U.S. Postal Serv.,*
147 F.3d 992 (D.C. Cir. 1998) .................................................................. 6-7

*Story of Stuff Project v. U.S. Forest Serv.,*
345 F. Supp. 3d 79–96 (D.D.C. 2018) ......................................................... 18

*Summers v. Dep't of Just.,*
140 F.3d 1077 (D.C. Cir. 1998) ................................................................... 21

*United States Envtl. Prot. Agency v. Mink,*
410 U.S. 73 (1973) ................................................................................. 8-9, 19

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.,*
141 S. Ct. 777 (2021) ............................................................ 8, 11, 12, 14, 15

*Citizens for Responsibility & Ethics in Wash. ("CREW") v. Dep't of Labor,*
478 F. Supp. 2d 77 (D.D.C. 2007) ............................................................ 5, 6

*Vaughn v. Rosen,*
484 F.2d 820 (D.C. Cir. 1973) ...................................................................... 6

*Vaughn v. Rosen,*
523 F.2d 1136 (D.C. Cir. 1975) .............................................................. 14, 15

*Winston & Strawn v. McClean*
843 F. 3d. 503 (D.C. Cir. 2016)..................................................................... 1

## **Statutes, Regulation, Rules, and Other Authorities**

5 U.S.C. § 552 ...................................................................... 1, 2, 3, 4, 6, 8, 9, 18, 21

5 U.S.C. § 551 ...................................................................................................... 9

Federal Rule of Civil Procedure 56 ................................................................. 1, 4

§111(b), (d) of the Clean Air Act ..................................................................... 12

Energy Policy Associates ("Plaintiff") brings this action against the United States Environmental Protection Agency (the "Agency" or "Defendant") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of certain records sent to, or received by, two senior Agency officials and one White House employee that included terms such as "CO2" and "NAAQS" and were created after January 21, 2021.  *See generally* Compl.; Shoaff Decl. ¶ 4. After the Agency made several voluntary disclosures, the parties conferred and narrowed the scope of issues remaining for judicial resolution.  The sole issue before the Court now is whether Defendant properly withheld certain documents pursuant to the deliberative process privilege recognized under FOIA Exemption 5.[1]  Specifically, Plaintiff challenges the Agency's withholding of certain information from eight slides in one PowerPoint presentation discussing the Agency's policy options and preliminary strategies for regulating power plant emissions.  This PowerPoint was created by senior Agency officials for a briefing with two members of the White House's Office of Domestic Climate Policy in the early days of the Biden presidential administration.

As explained below and in further detail in the accompanying Declaration of Agency

---

[1]    Defendant understands through negotiations between the parties' counsel that Plaintiff does not challenge Defendant's search for records.  *See Am. Ctr. For Law & Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("[W]hen the parties make representations . . . about which issues remain outstanding, they may fairly be held to those [ ] representations."). Accordingly, Defendants specifically address only the challenges to Defendant's withholdings identified by Plaintiff's counsel.  Thus, although summary judgment may not be granted solely on the basis that arguments are "conceded" and instead may enter summary judgment only when the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Winston & Strawn v. McClean*, 843 F. 3d. 503, 507 (D.C. Cir. 2016), Defendant respectfully note that there is undisputed evidence that the search conducted an adequate search for responsive records through a centralized email search based on provided search criteria.  Shoaff Decl. ¶ 5.

official John Shoaff and the Agency's *Vaughn* Index,[2] the Agency properly withheld certain information from Plaintiff pursuant to the deliberative process privilege. The withheld materials were predecisional because they were created prior to the Agency's final action on its proposed strategies. Additionally, the PowerPoint slides reflect the Agency's deliberative process in two ways. First, the contents of the named slides were the product of internal Agency discussions, brainstorming, and analysis by senior staff members, which, if fully developed, were designed for eventual review by the Agency's highest official — the Administrator. Thus, the Agency exercised its deliberative processes for the purpose of intra-Agency decision making. Second, the named slides contain alternatives, recommendations, and advice from senior Agency employees, which was presented to the White House for review and consultation, although the Agency retained the ultimate discretion to create its own policies and exercise its rulemaking powers. In this way, the slides also reflect inter-Agency deliberations. The release of the withheld information would result in foreseeable harm to an interest protected by the deliberative process privilege by discouraging free, open, and candid evaluation of potential Agency policy, both by Agency staff members, and between the Agency and White House. It would also cause confusion among the public about the state of the Agency's current policy on regulating power plant emissions, including whether the identified potential strategies under consideration represented final Agency decisions. For these reasons, Defendant moves for summary judgment affirming its decision to withhold these records under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

---

[2]   *See Shapiro v. United States Dep't of Justice,* 893 F.3d 796, 799 (D.C. Cir. 2018) ("Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions.").

**BACKGROUND**

Defendant hereby incorporates the accompanying Statement of Undisputed Material Facts ("SUMF") and the exhibits thereto, including the Declaration of John Shoaff, as well as Defendant's *Vaughn* indices.

On September 28, 2021, Plaintiff submitted a FOIA request using the Agency's FOIAonline website[3] seeking the following records:

> all electronic correspondence, whether email, text, SMS, etc., and any accompanying information, including also any attachments, a) sent to or from or which copies (whether as cc: or bcc:) i) Campbell.Ann@epa.gov and/or ii) rakosnik.delaney@epa.gov, that b) was also sent to or from or which copies (again, whether as cc: or bcc:) or mentions, anywhere, National Climate Advisor Gina McCarthy (including "Gina" and/or "McCarthy"), that also c) includes, anywhere, the following terms: i) "CO2", ii) "NAAQS", iii) "GHG" (including in "GHGs"), and/or iv) "Paris", and d) is dated January 21, 2021 through the date you process this request, inclusive.

Declaration of John Shoaff ("Shoaff Decl.") ¶ 4. The Agency received Plaintiff's FOIA request and assigned it FOIA Number EPA-2021-006794. *Id.*

On January 18, 2022, the Agency notified Plaintiff's counsel that it would need additional time to respond to Plaintiff's FOIA request due to unusual circumstances, including the need to coordinate intra-Agency and inter-Agency review of the identified responsive records. *Id.* ¶ 6. On March 31, 2022, the Agency released three records in response to Plaintiff's September 28, 2021, FOIA request. First, the Agency produced in full a February 4, 2021, email transmitted between several Agency employees with the subject line of "WH Power Plant Briefing." *Id.* ¶ 8.

Second, the Agency produced an eleven-slide PowerPoint presentation titled "Power Sector Strategy: Climate, Public Health, Environmental Justice: The Building Blocks." *Id.* ¶ 9.

---

[3]     FOIAonline, https://foiaonline.gov/foiaonline/action/public/home (last accessed Jan. 25, 2023).

The Power Point was created by Agency officials including Joe Goffman, then-Principal Deputy Assistant Administrator of EPA's Office of Air and Radiation, for a February 4, 2021, briefing by Mr. Goffman with Gina McCarthy and Ali Zaidi, then National Climate Advisor and Deputy National Climate Advisor, respectively, in the White House Office of Domestic Climate Policy. *Id.* The purpose of this meeting was twofold: (i) to brief the White House on potential policies and strategies under consideration by Agency decision-makers for regulating power plant pollution; and (ii) to provide the White House with an opportunity to share questions and comments on the Agency's potential regulatory strategies for the power sector.  *Id.*  The Agency withheld text from several slides, asserting it was exempt from disclosure pursuant to the deliberative process privilege recognized by Exemption 5 of the FOIA.  *Id.* ¶ 10.

Third, the Agency sent Plaintiff a four-page email chain between several Executive Branch employees and certain outside parties; one email address was redacted pursuant to FOIA Exemption 6, but the emails were otherwise disclosed in their original form.  *Id.* ¶ 11.

From March 31, 2022, through December 5, 2022, the parties continued to discuss the Agency's withholdings under Exemption 5. *Id.* ¶ 12.  In June and August 2022, the Agency provided Plaintiff with its *Vaughn* indices.  *Id.*  In June, August, and October 2022, the Agency made supplemental discretionary releases to Plaintiff of materials previously withheld from the February 4, 2021, PowerPoint presentation in an effort to narrow the issues in dispute.  *Id.*  On October 25, 2022, the Agency released its final updated version of the February 4, 2021, PowerPoint to Plaintiff with Exemption 5 redactions remaining only on pages 3, 5-11.  *Id.* ¶ 13. Apart from its discretionary releases, the Agency maintained all other Exemption 5 withholdings pursuant to the deliberative process privilege.  *Id.*  By this time, the Agency had released three slides in full, two slides in part, and the titles for all eleven slides.  *Id.*

4

Notwithstanding the Agency's efforts to reach a mutually agreeable result, on December 5, 2022, Plaintiff's counsel informed Defendant it planned to contest the Agency's asserted deliberative process privilege redactions on pages 3 and 5-11 of the 11-page February 4, 2021, PowerPoint presentation.  *Id.* ¶ 13.  Plaintiff does not challenge the Agency's search for responsive records or the withholdings on the emails it received.  *Id.*

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.  *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure

with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).   "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).   Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. and Exch. Comm'n,* 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981).

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989).   The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions.   5 U.S.C. § 552(a)(4)(B); *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).   An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index or declaration that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). The supporting documentation must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Emps. Union*, 802 F.2d at

527 n.9.

Although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project*, 656 F.2d at 738); *see Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

Plaintiff challenges the Agency's withholding of certain information from eight slides from a February 4, 2021, PowerPoint presentation prepared and delivered by Agency officials to the National Climate Advisor and Deputy National Climate Advisor in the White House's Office of Domestic Climate Policy. *See* Shoaff Decl. ¶¶ 8-13. As explained herein, the Agency properly withheld the disputed information pursuant to the deliberative process privilege under FOIA Exemption 5, and because there is no genuine dispute of material fact, the Agency is entitled to judgment as a matter of law.

Defendant has established that the disputed materials were properly withheld pursuant to the deliberative process privilege recognized by FOIA Exemption 5. The withheld information is

predecisional, as it predates final agency action on the proposed emission-reducing strategies. The disputed materials are deliberative because they reflect internal Executive Branch debate, discussion, and advice, embodying precisely the type of give and take between agency officials that the privilege was designed to protect. Disclosure of these materials would stifle and chill intra and inter-agency dialogue by releasing sensitive internal communications about a controversial topic and would cause confusion about the state of the Agency's regulation of power plant emissions.

I.    **DEFENDANT PROPERLY WITHHELD INFORMATION UNDER FOIA EXEMPTION 5**

The FOIA requires "federal agencies to make their records available to the public upon request[,]" unless the specified records are protected from disclosure by one of nine narrowly construed exemptions. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); 5 U.S.C. § 552(a)(3)-552(b). One such exemption, Exemption 5, allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a general matter, intra-agency communications are those between employees within a single executive branch agency, and inter-agency communications are between employees of different agencies or departments. *Judicial Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 109 (D.D.C. 2018) (also discussing intra-agency consultant corollary). One well-recognized civil discovery privilege that permits agencies to withhold records under Exemption 5 is the deliberative process privilege. *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021).

The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

The object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 9; *Sierra Club*, 141 S.Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure."); *United States Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl.'") (referencing S. Rep. No. 813, at 9 (1965)).

To properly assert the deliberative process privilege under Exemption 5, the Agency must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). Here, the Agency has shown both.

A.   **The Withheld Information Is Both Intra-Agency and Inter-Agency Communication Protected by FOIA Exemption 5**

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The FOIA statute defines "agency" as "an authority of the Government of the United States" including "any executive department," "establishment in the executive branch of the Government," or "independent regulatory agency." 5 U.S.C. §§ 551(1), 552(f). "Intra-agency" memorandum generally refers to those documents "addressed both to and from employees of a single agency." *Klamath*, 532 U.S. at 9-10 (quoting *United Stated Dep't of Justice v. Julian*, 486 U.S. 1, at 18 n.1 (1988) (Scalia, J. dissenting).

Although "inter-agency" documents may plainly be thought of as those distributed and discussed between agencies, the D.C. Circuit has also held that that phrase includes those records exchanged between executive branch agencies and the Office of the President, even though that office is not an agency for the purposes of FOIA.  *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 130 (D.C. Cir. 2005); *Judicial Watch, Inc. v. Consumer Fin. Protect. Bureau*, 60 F.Supp.3d 1, 10-11 (D.D.C. 2014) (also finding documents "intra-agency" under consultant corollary).

Here, the Agency withheld parts of eight slides from a February 4, 2021, PowerPoint presentation given by senior Agency officials to senior members of the White House Office of Domestic Climate Policy.  Shoaff Decl. ¶¶ 8-13.  The withheld information is covered under Exemption 5 as either intra or inter-agency communications.  The PowerPoint was created by the United States Environmental Protection Agency, an agency of the executive branch, and provided to senior officials with the White House Office of Domestic Climate Policy for the purpose of discussing future agency policy on the regulation of power plant emissions.  *Id.* ¶ 9.  Because, consistent with D.C. Circuit precedent, the protected documents are intra or inter-agency communications, they are eligible for protection under FOIA Exemption 5.  *Cause of Action Inst. v. U.S. Dep't of Com.*, 513 F. Supp. 3d 116, 125 (D.D.C. 2021) (finding communications between Consumer Financial Protection Bureau and White House staff intra or inter agency and covered by the deliberative process privilege of FOIA Exemption 5).

### B. The Withheld Information Is Covered by the Deliberative Process Privilege as Predecisional

To qualify for protection under Exemption 5, the United States Supreme Court has held that "a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8.  Interpreting the second

condition, the Supreme Court stated that Exemption 5 covers civil discovery privileges, including the deliberative process privilege, a form of executive privilege.  *Id.*  The deliberative process privilege permits the agency to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150.  To be covered by this privilege, the agency must show that the withheld documents are both predecisional and deliberative.  *Machado*, 971 F.3d at 370.

"A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made."  *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)).  The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter."  *Sierra Club*, 141 S. Ct. at 786, 788. Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of working out its policy."  *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 8 (D.C. Cir. 2014); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To show that a document is predecisional, the agency does not need to identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process.  *Access Reps. v. United States Dep't of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions).

The disputed withheld material is predecisional.  Plaintiff seeks disclosure of certain

11

information contained within eight slides, Slides 3 and 5-11, of the Agency's February 4, 2021, PowerPoint presentation made by senior Agency officials to members of the White House Office of Domestic Climate Policy.  Shoaff Decl. ¶¶ 9, 12-13.  Each slide addressed a different subject matter related to strategic advice on regulating power plant emissions: (i) Slide 3 addressed timing considerations for potential strategies; (ii) Slide 5 addressed approaches for combatting liquid waste emissions from coal combustion power plants; (iii) Slide 6 included Agency advice for reviewing Mercury and Air Toxics Standards; (iv) Slide 7 addressed policy considerations for regulating non-attainment areas, those places with air quality worse than National Ambient Air Quality Standards defined in the Clean Air Amendments of 1970; (v) Slide 8 provided strategic advice for regulating carbon dioxide emissions from power plants under §111(d) of the Clean Air Act; (vi) Slide 9 discussed policy considerations for regulating power plant emissions through the Regional Haze program, which is designed to implement air quality protection plans to reduce pollution that causes visibility impairment; (vii) Slide 10 discussed future strategies for regulating coal-fired power plants; and (viii) Slide 11 identified potential policies to address emissions from new natural gas power plants, including under §111(b) of the Clean Air Act.  *Id.* ¶¶ 21-44; Def. Ex. A, Agency's January 27, 2023, Vaughn Index.

As explained in Agency's sworn Declaration by Mr. Shoaff, the purpose of this meeting was to allow the Agency to brief and consult the White House on potential policy options for regulating power plant emissions.  *Id.* ¶ 9.  The Agency created the PowerPoint to stimulate discussion both within its leadership and with the White House for the ultimate purpose of assisting Agency leaders render final decisions.  *Id*.  Thus, the reason the Agency created the withheld materials is consistent with them being predecisional records.  Moreover, none of these records lost their status as predecisional by being formally and explicitly adopted as the Agency's final

decision on the matter. *Sierra Club*, 141 S. Ct. at 785 (finding the rationale behind the deliberative process privilege "does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done."); *Jud. Watch, Inc. v. United States Dep't of Def.,* 847 F.3d 735, 739 (D.C. Cir. 2017) (explaining predecisional materials can lose status as such in certain cases where there is an express adoption). As Mr. Shoaf explained, the Agency has not reached a final decision on whether to implement any of the proposed strategies detailed in the withheld portions of any of the eight named slides. *Id.* ¶¶ 21-44. The timing of this meeting provides relevant context for this inquiry: the meeting was held only 16 days after the President's inauguration on January 20, 2021, and thus, hardly at-time when the Agency was likely to be simply reciting final agency actions to a new presidential administration who had not yet had time yet to evaluate its policy priorities. The argument is buttressed by the title of the presentation itself "Power Sector Strategy: Climate, Public Health, Environmental Justice <u>The Building Blocks,</u>" language which suggests an introductory meeting to set the table for future discussion and refinement of policy objectives. *Id.* ¶ 8; (emphasis original).

Furthermore, in order to show documents are predecisional "the agency need not identify a specific final agency decision; it is sufficient to establish 'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States*, 617 F.2d at 868). Here, as detailed *infra* in Section C, the Agency has explained the deliberative process involved: Agency staff developed the content of the PowerPoint to engage the White House on the direction of future policy on regulating power plant emissions, and the Agency has not reached a final decision on any of the identified topics. Shoaff Decl. ¶¶9, 21-44; *Cause of Action Inst. v. Exp.-Imp. Bank of the United States*, 521 F. Supp. 3d 64, 88 (D.D.C. 2021) (finding withheld documents

predecisional because they adequately described the decision-making process involved: planning proposals between agency officials and the White House studying how to shepherd the President's nominees through confirmation).   Accordingly, because the Agency's withheld records reflect proposals to aid the Agency in rendering final decisions, and these records were not themselves reflective of final agency actions, the disputed records are predecisional.  *Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 20-2468 (RCL), 2022 WL 4534730, at *4 (D.D.C. Sept. 28, 2022) (finding disputed records predecisional where they were created to make findings and recommendations to shape agency policy and were non-final).

###### C.    The Withheld Information Is Covered by the Deliberative Process Privilege as Deliberative

Deliberative records are those "prepared to help the agency formulate its position," *Sierra Club,* 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies.  *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 364 (2021).  In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'"  *Id.* (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents part of the deliberative process make recommendations or express opinions on legal or policy matters).

In order to assist court's in evaluating whether disputed records are deliberative, the D.C. Circuit in *Judicial Watch*, 20 F.4th at 55, advised agencies to explain four factors: (1) what deliberative process is involved; (2) the role played by the disputed documents in the course of that process; (3) the nature of the decision making authority vested in the person issuing the disputed document; and (4) the relative position in the agency's chain of command of the persons

authoring and receiving the document.

Here, the Agency's explanation of the *Judicial Watch* factors shows its strategic communications with the White House on the direction of future environmental policies were deliberative.  First, the deliberative process involved was the Agency's development of strategies for reducing power sector emissions across the identified power sector industries.  Shoaff Decl. ¶¶ 9, 17, 22-23.  This process included the Agency internally collaborating to develop policy options, detailing those options in a briefing to senior White House climate advisors, and engaging those advisors in a dialogue to assist the Agency develop new policies, or refine existing policies. *Id*.  This process is plainly consistent with the Supreme Court's definition of "deliberative" communications as those "prepared to help the agency formulate its position." *Sierra Club*, 141 S. Ct. at 786; *Grumman Aircraft*, 421 U.S. at 184 (noting materials protected by the privilege are "predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision[.]").

Second, the February 4, 2021, PowerPoint was among the first significant discussions between the Agency and the new presidential administration on the regulation of power sector emissions.  The materials withheld from that PowerPoint presentation represent deliberative communications on two levels: (i) *within the Agency* – they capture the current state of ongoing discussions by Agency employees across multiple offices regarding proposed power sector strategies; and (ii) *within the Executive Branch* – they were created and communicated for the purpose of engaging the White House in a collaborative discussion on the future direction of Agency policies to regulate power sector emissions.   Shoaff Decl. ¶ 17.  The content of the disputed communications is purely deliberative.  As explained by Mr. Shoaff's Declaration:

> The information withheld from this slide is deliberative because it reflects the ongoing and then-developing internal discussions and weighing of pros and cons

of the identified strategies referenced in the slide. These potential strategies, and their accompanying staff opinions and reflections on their efficacy also captured in the slide were developed internally by Agency staff and managers for consideration by Agency decision-makers. These potential strategies do not represent any final agency actions or decisions.

*Id.* ¶ 26. [4]

Thus, the withheld materials are non-factual opinions and strategic advice, which represent precisely the sort of communications covered by the deliberative process privilege: those that "make recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 1144; *cf. Ancient Coin Collectors Guild v. United States. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (noting purely factual material which does not reflect an exercise of discretion of judgment calls are not covered by the deliberative process privilege.).   In sum, the Agency's February 4, 2021, presentation embodies the heart of the deliberative process – an exchange of ideas with the goal of promoting both internal and external debate to shape Agency policy, beginning with this opening meeting.  Shoaff Decl. ¶ 9, 17.

Third, the PowerPoint was created by Agency staff across multiple offices for ultimate consideration by senior Agency decisionmakers, including, but not limited to, the head of the Agency – the Administrator.  *Id.* ¶ 9.  A senior Agency official, Joe Goffman, Principal Deputy Assistant Administrator of the Agency's Office of Air and Radiation, contributed to creation of the PowerPoint and delivered the presentation for the Agency.  *Id.*   Fourth, the PowerPoint was authored by agency staff and leadership across multiple offices and was received by National Climate Advisor and Deputy National Climate Advisor in the White House Office of Domestic Climate Policy.  *Id.* ¶¶ 9, 20.  There is no direct hierarchical relationship between the creators and issuers of the presentation and its recipients.

---

[4]       Although this discussion was specific to Slide 5, Mr. Shoaff's Declaration provides similar explanations for all eight withheld slides.

The third and fourth factors from *Judicial Watch*, 20 F.4th at 55, do not detract from the Agency's conclusion that the withheld documents are deliberative.  As discussed in *Senate of the Commonwealth of Puerto*, 823 F.2d at 586, the third and fourth factors may be relevant to the extent they allow the court to consider the inference that "intra-agency memoranda from "subordinate" to "superior" [tend to be] more likely to be deliberative in character than documents traveling in opposite direction."  (referencing *Schlefer v. United States,* 702 F.2d 233, 238 (D.C. Cir. 1983)).  The D.C. Circuit's rationale is that discussions led by superiors and given to subordinates may be more likely to "simply describe already-made and in-place policy choices," as opposed to "debat[ing] proposed agency policies, positions, and actions[.]"  *Reporters Comm.*, 3 F.4th at 367.

But there is no clear hierarchical relationship between senior Agency officials such as Mr. Goffman and Ms. McCarthy from the White House Office of Domestic Climate Policy, thus this inference is inapplicable.  Moreover, as discussed at length in *Reporters Committee*, to the extent Plaintiff were to rely on the argument that the Agency's withheld materials could not be deliberative because they were not given from a subordinate to a superior, such argument would be of no moment.  The Court in *Reporters Committee* directly rejected this contention, holding "[t]here is no such directional precondition to protection under the deliberative process privilege." *Id.* (adding that there was no evidence in this case that the supervisor was simply giving direction instead of deliberating with subordinates).  Instead, the "key to whether a document is deliberative is whether it is part of the "give-and-take" of the "consultative process."  *Id.* at 364.

As explained, the withheld materials are deliberative because they involved the Agency propounding strategic advice with the purpose of engaging the White House in a dialogue to assist the Agency in formulating policy on regulating power plant emissions.  *Id.* at 363 (holding the

deliberative process privilege protects "internal dialogue about critical judgment calls aimed at advancing the agency's interests[,]" particularly around issues that spark "vigorous public debate[.]" ) ; *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, Civ. A. No. 21-1968 (TNM), 2022 WL 17356879, at *9 (D.D.C. Dec. 1, 2022) (holding that staff members confidential analyses about the economy prepared for Federal Reserve Board were deliberative); *Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910, at *6 (D.D.C. Sept. 28, 2021), *aff'd*, No. 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022) (finding written summaries of scientific review panel's analysis and funding recommendations were deliberative); *Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 140 (D.D.C. 2021) (finding that briefing materials containing subordinates' analyses and recommendations before meetings where participants made decisions qualify for the privilege); *Story of Stuff Project v. U.S. Forest Serv.*, 345 F. Supp. 3d 79, 95–96 (D.D.C. 2018) (finding that documents containing ongoing discussions among Forest Service interdisciplinary teams assessing proposals about how to collect data on waterways were properly exempted under deliberative process privilege).

### D.      The Agency Has Established that Disclosure of the Withheld Records Will Cause Foreseeable Harm to Interests Protected by FOIA Exemption 5

In addition to showing that specific documents qualify for protection under a named Exemption, the FOIA Improvement Act of 2016 further requires that an agency show that it (i) "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or (ii) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reporters Comm*., 3 F.4th at 369. To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually

impede those same agency deliberations going forward." *Id.* at 370.  Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld." *Id.* at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).

Here, disclosure of the withheld materials will cause foreseeable harm to two interests protected by the deliberative process privilege: candor and confusion of the Agency's position on controversial issues.  First, disclosure of the disputed materials would reduce candor among Agency employees when brainstorming, discussing, or critiquing proposed Agency polices, including the regulation of power plant emissions, for fear that those positions would be subject to premature criticism by outside stakeholders.[5]  Shoaff Decl. ¶¶ 46-47; *Mink*, 410 U.S. at 87 (explaining that the objective of the deliberative process privilege is to protect the candor of agency decision-making which would be harmed if employees were forced to "operate in a fishbowl"); *Donatos Sarras v. United States Dep't of Justice*, Civ. A. No. 19-0861 (CRC), 2021 WL 9909763, at *8 (D.D.C. Aug. 5, 2021) (recognizing candor as an interest protected by Exemption 5). Disclosure would chill the free exchange of ideas both within the Agency and between the Agency and other executive branch departments or the White House when identifying, analyzing, and discussing potential strategies for regulating power plants and environmental contaminants in the future.  Shoaff Decl. ¶¶ 46-47.  For instance, Agency staff would curb their discussion of weaknesses in policy on power plant regulation for fear that such communication would be

---

[5]    Mr. Shoaff's Declaration, and the Agency's *Vaughn* Index, provide a slide-by-slide breakdown of the predecisionl and deliberative nature of the withheld materials, and the foreseeable harm analysis is consolidated into one categorical analysis. *See Reporters Comm.*, 3 F.4th at 460 (discussing agency's obligation to explain foreseeable harm with sufficient specificity).

released and used against the Agency in future litigation. *Id.*; *Access Reports*, 926 F.2d at 1195 ("Disclosing internal deliberations about controversial issues, like those at issue here, can be especially likely to endanger "candid discussion within the agency.").

Thus, there is foreseeable harm to the Agency's continuing work on the very strategies and proposals identified the February 2021 PowerPoint, none of which have been finalized. *Emuwa v. U.S. Dep't of Homeland Sec.,* Civ. A. No. 20-1756 (TNM), 2022 WL 1451430, at *3 (D.D.C. May 9, 2022) (finding  asylum officers would "temper their discussions" of a particular applicant and focus less on substantive information in application if disclosure permitted thereby harming the fair consideration of asylum requests on the merits); *Amiri.*, 2021 WL 4438910, at *7 (finding foreseeable harm to candor were details from analysis and recommendations from grant proposals released).

Second, release of the proposed strategies for regulating power plant emissions would confuse the public as to the present state of Agency policies. *Id.* ¶¶ 48-49; *Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, 575 F. Supp. 3d 34, 51–52 (D.D.C. 2021) ("[T]he D.C. Circuit has long recognized that the risk of public confusion "has a special force with respect to disclosures of agency positions or reasoning concerning proposed policies." (citing *Petroleum Info. Corp.*, 976 F.2d at 1436 n.10 )).  Here, because the PowerPoint contains a host of policy alternatives still being considered by the Agency, there is a substantial probability that release of the withheld materials will confuse the public as to the current state of Agency thinking on those policy choices. *Id.* ¶¶ 48-49.  This will cause harm to the Agency's ability to regulate power plant emissions—a complex subject that implicates multiple laws, including the Clean Air Act and Clean Air Amendments Act, Clean Water Act and Resource Conservation and Recovery Act, Mercury and Air Toxics Standards regulation, and federal-state partnership programs under the Regional Haze Program. *Id.* ¶¶ 21-

44.  This is a particularly controversial area of regulation with considerable litigation, and thus the impacts of public confusion will have a real cost to the Agency.  *See Michigan v. United States Envtl. Protect. Agency*, 576 U.S. 743 (2015) (challenging agency's consideration of costs when regulating certain power plants).  Thus, the information withheld is of a sensitive nature, and misinterpretation of the proposed policies could result in considerable public confusion.  Thus, Defendant has provided this Court "a focused and concrete demonstration of why disclosure of the particular type of material at issue"—internal discussions of sensitive policy issues—"will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Reporters Comm.*, 3 F.4th at 370; *see Coastal States*, 617 F.2d at 866 ("Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position."); *Greenspan*, 2022 WL 17356879, at *17 (finding foreseeable harm by confusing the public in release of financial analysis not yet finalized); *Amiri.*, 2021 WL 4438910, at *7 (finding releasing information on grant reviews would not be complete and would confuse public).

## II.    DEFENDANT PRODUCED ALL SEGREGABLE INFORMATION

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'"  *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt").  Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Central v. Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Before approving the

application of a FOIA exemption, district courts must make specific findings of segregability regarding the material to be withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

As explained in Mr. Shoaff's Declaration, the Agency undertook a careful line-by-line analysis of the eleven-slide PowerPoint presentation, and concluded they had released all reasonably segregable, non-exempt material. *Id.* ¶ 50. As a result of this review, Defendant provided Plaintiff with all non-exempt responsive information.

Accordingly, Defendant appropriately applied Exemption 5 to the eight withheld slides from the February 4, 2021, PowerPoint presentation between senior Agency officials and the White House Office of Domestic Climate Policy. The Agency's declaration explains with requisite specificity the harm that would occur if the withheld information was released. *See Leopold v. Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866, at *4 (D.D.C. July 23, 2021). Accordingly, judgment in Defendant's favor is warranted.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor.

\*       \*       \*

22

January 27, 2023
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

MICHAEL BACHARACH
Special Assistant United States Attorney
*Application for admission to the United States District Court for the District of Columbia submitted and pending approval.*

By:    */s/ Stephen DeGenaro*

STEPHEN DEGENARO
Assistant United States Attorney
U.S. Attorney's Office, Civil Division
601 D St., NW.
Washington, D.C. 20530
Tel: (202) 252-7229
Stephen.DeGenaro@usdoj.gov

*Attorneys for the United States of America*