UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

ENERGY POLICY ADVOCATES,

          *Plaintiff,*

      v.

ENVIRONMENTAL PROTECTION
AGENCY,

          *Defendant.*

———————————————————————

Civil Action No. 22-0298 (TJK)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Energy Policy Advocates, pursuant to this Court's Minute Order dated December 18, 2022 and opposes the Defendant's Motion for Summary Judgment filed on January 27, 2023 (ECF No. 16).

## INTRODUCTION

This is a FOIA matter involving a handful of redacted slides in one PowerPoint document titled "Power Sector Strategy: Climate, Public Health, Environmental Justice. The Building Blocks. Briefing for Gina McCarthy and Ali Zaidi." With respect to every withholding in this case, Defendant asserts that Exemption 5, commonly known as the Deliberative Process Privilege, protects the redacted and withheld information from disclosure. Energy Policy Advocates respectfully submits that the agency has not carried its burden to demonstrate that Exemption 5 applies at all, or that only truly deliberative information was withheld in each of the slides at issue. Nevertheless, to the extent that the Court wishes to entertain the agency's

Exemption 5 claims, Plaintiff requests that the Court review the very few (8) pages at issue in camera and make specific factual findings with respect to their content and deliberative nature.

## STANDARD OF REVIEW

The Freedom of Information Act ("FOIA") requires "disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions, which are listed at 5 U.S.C. § 552(b)." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc*., 141 S. Ct. 777, 785, 209 L. Ed. 2d 78 (2021). Although the "vast majority" of FOIA cases can be resolved on summary judgment, *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527, 395 U.S. App. D.C. 155 (D.C. Cir. 2011), a court may grant summary judgment only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Coffey v. BLM*, 277 F. Supp. 3d 1, 6 (D.D.C. 2017)

In this case, there are two related but separate issues: First, the Court must decide whether the agency has met its burden to demonstrate that Exemption 5 applies to the records at issue. Second, the Court must decide whether redactions and withholdings are applied in a tailored manner, such that only truly exempt information is being withheld from Plaintiff. The standards of review for these two issues are distinct, but the agency carries the burden of proof at every stage.

To obtain summary judgment, the agency bears the burden to show the applicability of the claimed exemption to any withholding and each portion of a withholding. See *ACLU v. DOD*, 628 F.3d 612, 619, 393 U.S. App. D.C. 384 (D.C. Cir. 2011). This burden does not shift. See *Hardy v. Bureau of Alcohol*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017). FOIA's "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dept. of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). The exemptions are "narrowly construed." *FBI*

*v. Abramson*, 456 U.S. 615, 630, 102 S. Ct. 2054, 72 L. Ed. 2d 376 (1982), cf. *Milner v. Dep't of the Navy*, 562 U.S. 562, 565, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011). And the government bears the burden to show that any records or portions thereof that it withholds fit neatly within a statutory exemption. *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 357, 361 (D.C. Cir. 2021).

This Court reviews the applicability of exemptions claimed by the agency *de novo*, without deference to the agency or its declarants. 5 U.S.C. § 552(a)(4)(B), *cf. King v. United States Dep't of Justice*, 830 F.2d 210, 217, 265 U.S. App. D.C. 62 (D.C. Cir. 1987). "In FOIA cases, an agency is entitled to summary judgment if [it demonstrates that] any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Citizens for Responsibility & Ethics in Wash. v. United States Dep't of State*, 585 F. Supp. 3d 34, 39 (D.D.C. 2022) (internal citations and quotations omitted).

To meet its burden, an agency may rely on declarations describing the applicability of a FOIA exemption to information that the agency has withheld. See *Shapiro v. DOJ*, 893 F.3d 796, 799, 436 U.S. App. D.C. 295 (D.C. Cir. 2018). Although those declarations receive "a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200, 288 U.S. App. D.C. 324 (D.C. Cir. 1991), the declarations are not conclusive and must be examined carefully in light of the entire record of the case. The Court may grant summary judgment based solely on the agency's declarations *only* if they fully carry the agency's burden of proof and, if so, are unimpeached by contrary record evidence or by evidence of the agency's bad faith. See *Aguiar v. DEA*, 865 F.3d 730, 734-35, 431 U.S. App. D.C. 383 (D.C. Cir. 2017).

**ARGUMENT**

Defendant fails to carry its burden in this case in two separate but related ways: First, it cannot establish that Exemption 5 applies to the content withheld in the eight PowerPoint slides at issue. Second, assuming arguendo that Exemption 5 did apply, the Agency cannot demonstrate that it has applied the redactions in a narrow or tailored fashion, such that nonexempt and purely factual information is not being withheld. The solution to the Agency's failures of proof is for this Court to order the documents released, or alternatively for the Court to conduct an *in camera* review to analyze each redaction and withholding on the eight pages/slides at issue.

## I.      Redactions to the Slides Pursuant to Exemption 5 are Improper or Overbroad.

The Agency relies upon the declaration of John Shoaff and an accompanying Vaughn log to support the proposition that certain information was properly withheld under Exemption 5's "deliberative process privilege." However, Mr. Shoaff's declaration and the accompanying Vaughn log entirely fail to establish that the information withheld or redacted is properly covered by Exemption 5, or that the redactions have been narrowly tailored to cover *only* properly exempt information.

This case involves Exemption 5, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 is commonly known as the "deliberative-process privilege," and covers records "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB. v. Sears, Roebuck & Co*., 421 U.S. 132, 150, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975) (citation omitted), *cf. Citizens for Responsibility & Ethics in Wash. v. United States DOJ*, No. 21-5113, 2022 U.S. App. LEXIS 23202, at *5 (D.C. Cir. Aug. 19, 2022). "[R]ecommendations from subordinates to superiors lie at the core of the deliberative-process

privilege." *Amadis v. United States Dep't of State*, 449 U.S. App. D.C. 233, 239, 971 F.3d 364, 370 (2020).

As the D.C. Circuit recently held in *Citizens for Responsibility & Ethics in Wash. v. United States DOJ*, No. 21-5113, 2022 U.S. App. LEXIS 23202, at *17-18 (D.C. Cir. Aug. 19, 2022), citing numerous binding precedents:

> To properly invoke the privilege, an agency must show that the records at issue are both pre-decisional and deliberative. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-86, 209 L. Ed. 2d 78 (2021). A record is pre-decisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434, 298 U.S. App. D.C. 125 (D.C. Cir. 1992) (internal quotation marks and citations omitted). And a record is deliberative if it "reflects the give-and-take of the consultative process." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quotation marks omitted) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866, 199 U.S. App. D.C. 272 (D.C. Cir. 1980)).
>
> Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains. An agency invoking the deliberative-process privilege thus must "establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585-86, 262 U.S. App. D.C. 166 (D.C. Cir. 1987) (internal quotation marks and citation omitted). The agency, that is, "bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Paisley v. CIA*, 712 F.2d 686, 698, 229 U.S. App. D.C. 372 (D.C. Cir. 1983), vacated in part on other grounds, 724 F.2d 201, 233 U.S. App. D.C. 69 (D.C. Cir. 1984).
>
> To be sure, the deliberative-process privilege may apply even when the agency never reaches a final decision. That could happen, for instance, if an idea "dies on the vine" or meets a "dead-end." Sierra Club, 141 S. Ct. at 786. But to carry its burden in such a situation, the agency still must tie the withheld records to a decision-making process, even if that process did not ultimately result in a decision. Coastal States, 617 F.2d at 868.

In this case, the agency has entirely failed to show that the deliberative process privilege applies to the records at issue. To be sure, the Agency ritually declares each withholding pertains to "potential strategies" for pursuing a "Climate, Public Health [and/or] Environmental Justice"

agenda (Defendant's Statements of Material Undisputed Facts, ECF No. 16-2, ¶¶ 24-32), through "regulating and reducing power sector pollution" (Shoaff Declaration, Exhibit A, p. 20), and "priorities, key factors, and constraints" it faces on such a pursuit (*Id*., at ¶ 31). Yet it studiously does not point to any Agency "decision" that was being contemplated or that was thereafter made, and it appears that no "superior and subordinate" rulemaking relationship existed between the Agency-officials parties to the underlying correspondence and the White House Climate Office officials with whom the underlying records were shared.

Among the failures of the Agency's affidavit and Vaughn log is that the Agency's "decisions" it purports to have contemplated are extraordinarily, indeed as stated *studiously* vague, quite possibly because the White House Climate Office staff with whom the slides were shared work for an Office which was created by am Executive Order. That Executive Order, in turn reveals the White House officials with whom the PowerPoint was shared have no conceivable superior/subordinate role in new power sector rulemakings or otherwise with respect to the authorities the Agency does mention in support of its withholdings.[1] For example, Defendant states regarding Document No. ED_006414_00000550 that "a final decision on whether to promulgate the underlying proposed rule or pursue the identified action under consideration has not been made and is still pending" (Shoaff Declaration, Exhibit A, p. 20). But the agency admits that the relevant document was created to "brief the White House" (Climate Office) on various nonspecific "priorities and options for regulating the power sector," over or with which that Office has no

---

[1] See "Executive Order on Tackling the Climate Crisis at Home and Abroad," January 27, 2021, https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/27/executive-order-on-tackling-the-climate-crisis-at-home-and-abroad/, which tasks this Office it creates with coordinating a Task Force, and cites to EPA priorities to coordinate Federal Advisory Committee Act duties, fund certain Task Force activities, assist with enforcement of environmental violations, but does not in any way establish any such relationship.

relevant deliberative role. Defendant has not explained *who* was deliberating or even specified what decision was being deliberated, let alone the reason for the White House Climate Office's formal involvement, except with reference to extraordinarily broad "priorities" which involve an entire sector of the American economy.

The Agency goes even further with respect to some of its arguments. For example, with respect to Slide 6, the Agency's declarant states that the agency was deliberating about the effects of its deliberations on future deliberations ("Agency's first take on how the proposed strategies might impact the Agency's decision-making process."). Similar arguments appear with respect to Slide 8. The Agency's declaration may even obfuscate more than it illuminates: With respect to Slide 10, the Agency states that it "proposes potential next steps" and "identifies key strategic considerations associated with the identified potential next steps." About what? "[P]otential strategies and possible future regulatory actions for coal-fired units and [] a discussion of the priorities, key factors, and constraints of such regulations." (Defendant's Statements of Material Undisputed Facts, ¶ 31).

On summary judgment, it is the government's burden to show that the redacted material is both pre-decisional and deliberative. The Agency's thematic assertions and vagaries fail to establish what "decisions" are at issue beyond the occasional bare citation to a statutory provision or program operated under that law (such as the Clean Air Act), and references to entire sectors of the American economy. Nor has the Agency established that its communications were "deliberative." Indeed, the Agency admits that the PowerPoint presentation at issue was prepared to "brief the White House" rather than to weigh, internally or with some other agency, the merits and demerits of a particular decision. Conveying the Agency's policy, Plaintiff respectfully submits, is entirely different from deliberating what that policy should be.

7

Nor has the Agency explained that the role of the individuals who created or reviewed the PowerPoint presentation are such that deliberation was likely, which seems to be a particularly acute failure here. "[R]ecommendations from subordinates to superiors lie at the core of the deliberative-process privilege." *Amadis v. United States Dep't of State*, 449 U.S. App. D.C. 233, 239, 971 F.3d 364, 370 (2020). Here, however, the Agency admits that the PowerPoint was not created by a subordinate making recommendations to a superior, but was instead created to "brief" employees of a different agency with no direct supervisory authority over the authors or Clean Air Act rulemakings, but with an Office created by Executive Order to facilitate multi-agency coordination on, e.g., enforcement of violations of extant environmental laws, which EO makes no mention of "rules" and only one, irrelevant mention of regulation ("The Chair of the Council on Environmental Quality shall consider additional administrative steps and guidance to assist the Federal Acquisition Regulatory Council in developing regulatory amendments to promote increased contractor attention on reduced carbon emission and Federal sustainability.").

Even accepting the Agency's assertions and arguments at face value, however, the Agency has yet another failure of proof. Its declaration submitted to support the Motion for Summary Judgment appears to be based in large part on hearsay. Although it is true that the D.C. Circuit has permitted hearsay related to an agency's search for records, when such hearsay is submitted by the supervisor of a search, *Meeropol v. Meese*, 790 F.2d 942, 951, 252 U.S. App. D.C. 381 (D.C. Cir. 1986); see also *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 135 (D.D.C. 2008), the Agency's declaration in this case goes much further. For example, the Agency states that the information it redacted has never been shared outside the Executive Branch. Shoaff Declaration at ¶ 18. But the Declarant has established no basis for such a sweeping assertion, especially when the Declarant has no knowledge of what employees of other Executive Branch agencies, at least some

of whom necessarily received or reviewed the relevant PowerPoint document, have done with the information at their disposal. The hearsay contained in Mr. Shoaff's declaration appears to range far and wide, not only with respect to the adequacy of the agency's search for records (which Plaintiff in this case concedes), but also with respect to the content of various records and what unknown or unidentified third party recipients of the relevant record may have done with it. This is precisely the type of hearsay testimony that must be disregarded. See, e.g., *Londrigan v. FBI*, 670 F.2d 1164, 1174, 216 U.S. App. D.C. 345 (D.C. Cir. 1981) (district court's grant of summary judgment reversed due to the affiant's lack of personal knowledge of the facts underlying the exemption and his reliance on hearsay) and *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264-65 (D.D.C. 2004) (court struck portions of the agency FOIA Director's declaration due to a lack of personal knowledge and impermissible hearsay). Indeed, hearsay must be carefully scrutinized and, when it crosses the line, stricken from consideration, in order "to permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527, 255 U.S. App. D.C. 449 (D.C. Cir. 1986) (citations omitted)

Here, the Agency has offered only the most generalized and verbose, but non-specific, explanations of who was deliberating what. The Agency's declaration in support of summary judgment is itself nonspecific with respect to its assertions relating to deliberations, or offers no basis for the declarant's personal knowledge of the facts declared. This Court cannot satisfy itself that Exemption 5 applies to every jot and tittle of every redacted portion of the record, and thus it must deny the agency's Motion for Summary Judgment.

## II.      *In Camera* Review of the Eight Pages is Appropriate

To the extent that this Court has any questions about the Agency's declaration or its asserted claims under Exemption 5, and especially in light of the very few records at issue in this case, this Court should review the withholdings on the eight pages/slides *in camera*. Plaintiff respectfully submits that such review will make plain how unsupported (or unsupportable) the agency's claims are.

The Freedom of Information Act expressly empowers this Court to examine the withheld records or portions of a record in camera. 5 U.S.C. § 552(a)(4)(B) (stating that the Court "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions…"). The D.C. Circuit has made clear that "district courts have discretion to rely on affidavits or conduct in camera review to decide whether government has released all reasonably segregable, non-exempt material." *Hodge v. FBI*, 403 U.S. App. D.C. 255, 262, 703 F.3d 575, 582 (2013), citing to *Stolt-Nielsen Transportation Group, Ltd. v. United States*, 534 F.3d 728, 734-35, 383 U.S. App. D.C. 1 (D.C. Cir. 2008). "While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate." *Quinon v. FBI*, 318 U.S. App. D.C. 228, 86 F.3d 1222, 1227 (1996). The D.C. Circuit has explained that "in camera review may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption," or when "the requested documents are few in number and of short length." *Id*.

In this case, only one PowerPoint document is at issue, specifically parts of eight pages. The Agency has reduced its withholdings over time in recognition of (and affirming) the lack of privilege of those subsequently unredacted portions. However, for the reasons set forth above, it

should release the remaining withheld material. In light of the very small universe of records at issue, as well as the deficiencies of the Agency's declaration as set forth above, Energy Policy Advocates respectfully submits that this is a case in which *in camera* review is especially important and appropriate. Only by reviewing the pages at issue will this Court truly be able to assess whether the vague and generalized assertions of deliberations in Mr. Shoaff's declaration are borne out in the document itself.

## CONCLUSION

This Court should deny the Agency's Motion for Summary Judgment. To the extent that the Court concludes that the agency's Vaughn log does not provide sufficient information to assess the application of any exemption to any particular record or portion of a record, the Court should order the eight pages to be submitted unredacted *in camera* and either order the pages released following such review or give the parties a further opportunity to address any questions that arise in the context of *in camera* review.[2]

Respectfully submitted this the February 24th, 2023,

 /s/ Matthew D. Hardin
MATTHEW D. HARDIN
D.C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
(202) 802-1948
MatthewDHardin@protonmail.com

*Counsel for Plaintiff*

---

[2] Plaintiff notes that its complaint seeks an award of attorney's fees. Insofar as the agency has not addressed the fees issue and it appears premature to do so prior to a judicial determination that this case is at its end, Plaintiff merely notes here that it anticipates seeking fees at the appropriate juncture.