UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENERGY POLICY ADVOCATES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES ENVIRONMENTAL ) <br> PROTECTION AGENCY, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 22-0298 (TJK) |

## DECLARATION OF JOHN SHOAFF

I, John Shoaff, declare that the following statements are true and correct:

1. Since April 2018, I have served as the Director of the Office of Air Policy and Program Support ("OAPPS") within the Office of Air and Radiation ("OAR"), in the United States Environmental Protection Agency ("EPA" or "Agency"). OAR's principal function is to implement the Clean Air Act. OAR develops national programs, policies, and regulations for controlling air pollution and radiation exposure. The central responsibilities of the OAPPS includes overseeing the processing of OAR's Freedom of Information Act ("FOIA") requests; coordinating OAR regulatory packages, Congressional requests, and correspondence; managing a Federal Advisory Committee; and working on a handful of cross-cutting issues, such as environmental justice, economics, research, science policy and international issues.  Prior to serving as Director of OAPPS, I was the OAPPS Policy Group Leader for approximately three and half years from December 2014 to April 2018. Before joining OAR, I worked in various roles in

EPA's Office of Chemical Safety and Pollution Prevention 22 years. I first started working for the Agency in 1993.

2. The statements I make in this Declaration are made based on my personal knowledge, upon information acquired by me from staff and colleagues through the performance of my official duties, and upon conclusions reached and determinations made based on that information.

3. I have read and am personally familiar with Energy Policy Advocates' ("Plaintiff") September 28, 2021, FOIA request identified by the Agency as request number EPA-2021-006794.  As the Director of OAPPS, I supervised staff members responsible for responding to this request. The basis for each of the Agency's FOIA withholdings is described in the *Vaughn* index, updated January 27, 2023, which is attached to this Declaration. *See* Exhibit A. The purpose of this Declaration is to explain the basis for the Agency's withholdings and support the Agency's Motion for Summary Judgment.[1]

**PLAINTIFF'S SEPTEMBER 28, 2021, FOIA REQUEST**

4. *Plaintiff's FOIA Request EPA-2021-006794*. On September 28, 2021, Plaintiff submitted a FOIA request using the Agency's FOIAonline website[2] seeking the following records:

   all electronic correspondence, whether email, text, SMS, etc., and any accompanying information, including also any attachments, a) sent to or from or which copies (whether as cc: or bcc:) i) Campbell.Ann@epa.gov and/or ii) rakosnik.delaney@epa.gov, that b) was also sent to or from or which copies (again, whether as cc: or bcc:) or mentions, anywhere, National Climate Advisor Gina McCarthy (including "Gina" and/or "McCarthy"), that also c) includes, anywhere, the following terms: i) "CO2", ii) "NAAQS", iii) "GHG" (including in

---

[1] Plaintiff has indicated it is limiting its challenge to EPA's withholdings on pages. 3, 5-11 of an eleven-page PowerPoint presentation dated February 4, 2021 (*Bates Stamp* ED_006414_00000550-0001 through ED_006414_00000550-0011). Therefore, this Declaration only addresses the Agency's withholdings identified by Plaintiff as subject to challenge in this litigation.
[2] *Get the FOIA Information You Need From One Place,* FOIAonline, https://foiaonline.gov/foiaonline/action/public/home (last accessed Jan. 19, 2023)

"GHGs"), and/or iv) "Paris", and d) is dated January 21, 2021 through the date you process this request, inclusive.

Plaintiff's FOIA request, which the Agency assigned tracking number EPA-2021-006794, is attached as Exhibit B.

5. *The Agency's Search for Records*. Plaintiff's FOIA request provided the relevant search criteria, including the date range, electronic search terms, and custodians. Using the provided search criteria, EPA conducted an initial centralized email search of the identified custodians' Agency email accounts in January 2021. EPA also confirmed that the Agency did not possess any responsive text messages. I understand that Plaintiff is not challenging EPA's search for records in this litigation.

## THE AGENCY'S PRODUCTION OF RECORDS

6. *The Agency's Production of Records*. On January 18, 2022, OAR employee Sabrina Hamilton, Air and Radiation Liaison Specialist and FOIA Coordinator, Office of Air and Radiation, sent a letter through FOIA online to the Plaintiff's counsel, Mr. Matthew D. Hardin, indicating that, due to unusual circumstances, OAR required additional time to complete its response to Plaintiff's FOIA request. Ms. Hamilton's letter is attached as Exhibit C.

7. Consistent with Ms. Hamilton's January 18, 2022 letter, the Agency completed its response to Plaintiff's FOIA request on March 31, 2022 and produced a total of three documents.

8. The first document (*Bates Stamp* ED_006414_00000549-00001) is an email transmitted on February 4, 2021, between several EPA employees with the subject line of "WH Power Plant Briefing." This document was released in full.

9. The second document (*Bates Stamp* ED_006414_00000550-0001 through

3

ED_006414_00000550-0011) is a PowerPoint presentation entitled "Power Sector Strategy: Climate, Public Health, Environmental Justice: The Building Blocks." The Power Point was created by Joe Goffman, then-Principal Deputy Assistant Administrator of EPA's Office of Air and Radiation, among other Agency employees, for a February 4, 2021, briefing by Joe Goffman with Gina McCarthy and Ali Zaidi, then National Climate Advisor and Deputy National Climate Advisor, respectively, in the White House Office of Domestic Climate Policy. Other meeting invitees included EPA Chief of Staff Dan Utech and Office of Domestic Policy employee Maggie Thomas. The purpose of this meeting was to brief the White House on potential policies and strategies under consideration by Agency decision-makers for regulating power plant pollution, and to provide the White House with an opportunity to share questions and comments on the Agency's potential regulatory strategies for the power sector.

10. The Agency withheld certain portions of the February 4, 2021, PowerPoint presentation from Plaintiff pursuant to the deliberative process privilege of Exemption 5 of the FOIA.

11. The third document in the Agency's March 31, 2022, production (*Bates Stamp* ED_006414_00000562-00001 through ED_006414_00000562-00004) is a four-page email chain between several employees of the Executive Branch and certain outside parties. The only information withheld from the third document is one email address that was withheld under Exemption 6 in three different places in this email chain. All other information in this email chain was released.

12. After the Agency's March 31, 2022, document production, it is my understanding that Mr. Hardin, on behalf of Plaintiff, began discussions with the United States Department of Justice regarding the Agency's deliberative process privilege redactions in the

February 4, 2021, PowerPoint presentation. During the course of these discussions, Mr. Hardin requested the Agency provide an informal *Vaughn* Index justifying its deliberative process privilege withholdings, which the Agency provided to Plaintiff in June 2022. The Agency subsequently provided an updated version of the *Vaughn* Index in August 2022. On several other occasions, Mr. Hardin also requested the Agency reconsider its withholdings and make additional releases. In an effort to narrow the issues, the Agency agreed to make several additional discretionary releases of information that were initially withheld under the deliberative process privilege. As part of its discretionary releases, three slides were released in full, two slides were released in part, and the titles for all eleven slides were released. These discretionary releases were made on June 10, 2022, August 10, 2022, and October 25, 2022. Apart from these discretionary releases, the Agency maintained all other Exemption 5 withholdings in the PowerPoint based on its assertion of the deliberative process privilege.

13. On October 25, 2022, the Agency released its final updated version of the February 4, 2021, PowerPoint to Plaintiff with Exemption 5 redactions remaining on pages 3, 5-11.

**THE AGENCY'S ASSERTION OF FOIA EXEMPTION FIVE: DELIBERATIVE PROCESS PRIVILEGE**

14. Notwithstanding the Agency's efforts to reach a mutually agreeable result, Mr. Hardin emailed the Department of Justice on December 5, 2022, to provide written notice of their intent to challenge all remaining redactions in the PowerPoint presentation. Specifically, Plaintiff notified their intent to challenge the Agency's "claimed deliberative process redactions on pp 3, 5-11 of 11 in the pdf ED_006414_00000550-00005-11 in 'ED_006414_00000550_Formal_RWR – August 5, 2022 Release for EPA-

2021-006794.'"[3] As to the first and third documents EPA produced to Plaintiff, *Bates Stamp* ED_006414_00000549-00001 and ED_006414_00000562-00001 through ED_006414_00000562-00004, respectively, Plaintiff indicated that they do not challenge the Exemption 6 withholdings in the first and third documents.

15. Thus, it is my understanding that the only withholdings being challenged in this litigation are the Agency's redaction of certain information on eight slides, slides 3, 5-11, of the Agency's February 4, 2021, PowerPoint presentation (*Bates Stamp* ED_006414_00000550-0001 through ED_006414_00000550-0011).

16. The attached *Vaughn* index and this declaration, updated January 27, 2023, provides a detailed description of the portions of the PowerPoint withheld under Exemption 5, deliberative process privilege, and the basis for the Agency's withholding. As reflected in the Agency's *Vaughn* index, the withheld information reflects the Agency's then-developing strategies and proposals for regulating and reducing power sector pollution.

17. As indicated on the title slide, this PowerPoint presentation was prepared for a February 4, 2021, meeting between senior Agency officials and senior White House advisors to discuss the Agency's then-developing priorities and strategies for regulating and reducing power sector pollution. This meeting was held early in the new Presidential Administration at a time when Agency staff and managers were preliminarily developing and discussing their policy priorities and regulatory strategies for, *inter alia,* reducing power sector emissions. This PowerPoint reflects the then-current state of

---

[3] Mr. Hardin's December 5 email erroneously cites to an earlier, outdated version of the PowerPoint presentation that was released to Plaintiff on August 5, 2022 (ED_006414_00000550_Formal_RWR – August 5, 2022, Release for EPA-2021-006794). The Agency has conferred with Mr. Hardin and confirmed that he intended to cite to a later version of the PowerPoint, specifically, the version that was released on October 25, 2022, named "October 2022 Release – ED_006414_000000550_Formal_RWR."

those internal deliberations regarding the Agency's potential strategies. The PowerPoint also reflects the collaborative and advisory communications between the White House and Agency to develop and obtain feedback on potential regulatory strategies addressing the power sector. The PowerPoint outlines several potential strategies and paths forward for regulating power sector pollution, and in many instances, also contains internal analysis of the relative strengths and weaknesses of each approach. Thus, the decision making process involved is the Agency's development of regulatory priorities and strategies addressing power sector pollution, and this PowerPoint was prepared by Agency officials for the purpose of briefing the White House on these developing strategies and obtaining any comments, guidance, or feedback from the White House for consideration by Agency decision-makers. At the time the PowerPoint was created, the regulatory strategies, ideas, and options discussed therein were under continuing development and consideration by the Agency and do not represent any final Agency action or decision.

18. *Inter-/Intra-Agency Threshold.* In order to withhold records or information from release pursuant to Exemption 5 of the FOIA, they must be inter- or intra-agency records. Here, all information withheld from Plaintiff in the PowerPoint presentation pursuant to this exemption consists of information generated by the Agency, which is wholly internal to the Agency and the White House. The withheld information has never been circulated outside of the Executive Branch. As such, all information withheld pursuant to Exemption 5, deliberative process privilege, is "inter-agency" and satisfies the threshold of the exemption.

19. *Deliberative and Pre-Decisional.* The Agency withheld portions of the challenged record under FOIA Exemption 5, deliberative process privilege. The attached *Vaughn* index provides a detailed description of the portions of the record withheld under Exemption 5, deliberative process privilege, and the basis for withholding. As reflected in EPA's *Vaughn* index, the withheld information includes potential strategies for regulating and reducing power sector pollution.

20. The PowerPoint reflects the then-current state of the Agency's regulatory strategies and approaches for reducing power sector pollution that were under development and consideration by the Agency. The withheld information in this PowerPoint is deliberative because it reflects ongoing, internal discussions at the Agency about power sector pollution, including the Agency's then-current, and still-developing, internal group thinking about potential future regulatory strategies, rulemakings, and other associated strategic considerations for reducing power sector pollution. Many of the slides also contain internal Agency staff reflections and opinions concerning the efficacy of the proposed strategies. These proposed potential strategies, ideas, opinions, and reflections contained in the PowerPoint were developed internally at the Agency by Agency staff and managers in OAR, among other EPA offices, for consideration by Agency decision-makers and were presented to the White House in this PowerPoint to provide the White House with an opportunity to share questions and comments on the Agency's potential regulatory strategies for the power sector. At the time the PowerPoint was created, the Agency had not reached a final decision on any of the strategies or regulatory approaches discussed in the document.

21. *Slide 3*. On Slide 3 (page 3) of the PowerPoint presentation, the Agency has withheld text discussing potential strategies for regulating power sector emissions. The withheld information also consists of Agency staff members' initial thoughts as to the relative pros and cons of the identified strategic approaches, including the timing for implementing those approaches.

22. The withheld material on Slide 3 is pre-decisional because it includes a discussion of potential strategies for regulating power sector emissions that were developed and proposed by Agency staff for eventual presentation to Agency decision-makers. The strategies and proposals withheld from this slide do not reflect the Agency's final decision on this subject. The Agency has not yet reached a final decision as to the implementation of the proposed strategies discussed in this slide.

23. The information withheld on Slide 3 is deliberative because it reflects the internal weighing of the pros and cons of the possible future regulatory strategies discussed in the slide. The potential strategies and internal analysis, advisory opinions, and reflections concerning the identified strategies that were withheld from this slide were developed by EPA staff and managers for consideration by Agency decision-makers as they work to further develop and finalize their decisions on the regulatory strategies described in the PowerPoint. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

24. *Slide 5*. The information withheld from Slide 5 (page 5) of the PowerPoint presentation outlines the Agency's then-developing potential strategies for regulating power sector

9

discharges of pollutants and land pollution under the Clean Water Act and Resource Conservation and Recovery Act, respectively. This slide identifies and discusses two potential strategies that were developed and proposed by Agency staff for consideration by Agency decision-makers. The strategies pertain to regulating and reducing water and land pollution from the power sector, and the withheld material is also comprised of internal Agency staff members' opinions of the relative pros and cons of the proposed strategies.

25. The information withheld from this slide is pre-decisional because it discusses potential strategies which do not reflect the Agency's final decision on this subject. The Agency has not yet reached a final decision as to the potential strategies discussed in this slide.

26. The information withheld from this slide is deliberative because it reflects the ongoing and then-developing internal discussions and weighing of pros and cons of the identified strategies referenced in the slide. These potential strategies, and their accompanying staff opinions and reflections on their efficacy also captured in the slide were developed internally by Agency staff and managers for consideration by Agency decision-makers. These potential strategies do not represent any final agency actions or decisions. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

27. *Slide 6*. Slide 6 (page 6) of the PowerPoint identifies potential strategies for reducing emissions through Air Toxics Standards, including potential future rulemakings and other

regulatory actions under the Air Toxics program that were, and are still, under consideration by the Agency.

28. The information withheld from this slide did not reflect a final Agency decision or policy at the time the document was created, and, accordingly, is pre-decisional. The Agency has not yet reached a final decision on the potential strategies discussed in this slide.

29. The withheld information is deliberative because it is composed of proposed strategies developed by OAR staff and managers for consideration by Agency decision-makers. The withheld information is also deliberative because it contains Agency staff members' analysis and reflections of the efficacy of the identified strategies and includes a presentation of options for implementing the strategies. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

30. *Slide 7.* Slide 7 (page 7) of the PowerPoint presentation identifies the non-attainment provisions under the Clean Air Act as a potential strategy for regulating and reducing power sector emissions.

31. The Agency has not yet reached a final decision on the potential non-attainment strategies discussed in Slide 7. Because the document and withheld material therein was generated prior to finalizing a decision on these strategies and potential future regulatory actions, the withheld information is pre-decisional.

32. The information withheld from the body of Slide 7 is deliberative because it consists of the Agency's initial reflections and opinions on these strategies and identifies potential

future regulatory actions under the non-attainment provisions that were under consideration by Agency decision-makers at the time the document was created. The potential strategies discussed in this slide were developed by OAR staff and managers for consideration by Agency decision-makers, and the views and reflections contained in this slide reflect the ongoing, internal deliberations surrounding the potential strategies and regulations. The withheld information also consists of the Agency's then-developing ideas for how to implement such potential actions. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

33. *Slide 8*. Slide 8 (page 8) of the PowerPoint discusses potential strategies for reducing power sector emissions under Section 111(d) of the Clean Air Act. The Agency has withheld the second bullet point on this slide because it identifies a potential future rulemaking under consideration by the Agency.

34. Because the information on this slide was generated prior to finalizing a decision on the future rulemaking, the withheld information is pre-decisional. The Agency has not yet reached a final decision on the potential rulemaking discussed in this slide.

35. The withheld information is deliberative because it provides then-developing details and then-current analysis of the nature and impact of the potential future rulemaking discussed in this slide. The potential future rulemaking discussed in the withheld portion of the slide was developed internally by OAR staff and managers for consideration by Agency decision-makers. At the time this document was created, the Agency was

considering the proposed rulemaking identified in the second bullet on this slide, and the Agency has not yet reached a final decision on that proposed rulemaking effort. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

36. *Slide 9.* Slide 9 (page 9) discusses the potential regulatory strategies for regulating power sector emissions through the Regional Haze program. This text also addresses the pros and cons of adopting various strategies.

37. At the time the document was prepared, the Agency had not yet reached a final decision as to the proposed regulatory strategies discussed in the slide, and the Agency has not yet reached a final decision on those proposed strategies. Accordingly, the withheld information is pre-decisional.

38. The withheld information in this slide is deliberative because it reflects the back-and-forth discussions about strategic considerations associated with the proposed regulatory strategies referenced in the slide, and it discusses the pros and cons of the identified strategies under the Regional Haze program. The potential regulatory strategy discussed in this slide was developed internally by OAR staff and managers for consideration by Agency decision-makers. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

39. *Slide 10.* Slide 10 (page 10) identifies potential strategies and possible future regulatory actions for coal-fired units and includes a discussion of the priorities, key factors, and constraints of such regulations. As the title of the slide indicates, the matters discussed in this slide consist of proposed next steps for coal-fired units and do not represent any final Agency decisions or policy.

40. As of the date of the filing of this Declaration, the Agency is still considering its options with respect to the proposed strategies discussed in this slide. Because the information on this slide was generated prior to finalizing a decision on the strategies and potential future regulatory actions discussed in this slide, the withheld information is pre-decisional.

41. The withheld information is deliberative because it reflects the internal weighing of risks, benefits, and proposed strategies for implementing regulations for coal-fired units.  The slide also consists of strategic advice Agency decision-makers on which actions the Agency believes should be given consideration and the risk and benefits of adopting its advised approaches. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

42. *Slide 11.*  Slide 11 (page 11) identifies potential approaches and strategic considerations for regulating and reducing emissions from new natural gas units under Section 111(b) of the Clean Air Act. The withheld information identifies potential approaches reducing emissions, including possible future rulemakings and other identified strategies. The

withheld information also consists of a discussion of relevant considerations associated with the strategies identified in the PowerPoint.

43. The document was prepared prior to the Agency finalizing its regulatory approach for new natural gas units under Section 111(b), which is still under development and consideration by Agency decision-makers. Because the information on this slide was generated prior to finalizing a decision on the strategies and potential future regulatory actions discussed in the slide, the withheld information is pre-decisional.

44. The withheld information is deliberative because it captures Agency staff members' proposed strategies for regulating and reducing new natural gas units, including identification of potential regulatory strategies and weighing of the risks and benefits thereof. The proposed strategies discussed in the slide were developed by EPA staff for consideration by Agency decision-makers, and no final decision on the proposed strategies had been made at the time the document was created. The withheld information also consists of Agency staff members' ideas for how best to implement the proposed strategies. The information in this slide is also deliberative because it was prepared for the purpose of briefing the White House on the Agency's potential power sector regulatory strategies and to provide the White House with an opportunity to comment on the potential regulatory strategies under consideration by Agency decision-makers.

## FORESEEABLE HARM

45. The Agency is tasked with regulating environmental contaminants and pollutants to protect human health. The Agency has withheld information on eight slides from the February 4, 2021, Power Point that, if released, would foreseeably harm the Agency's internal deliberative process that is vital in developing potential strategies for regulating

and reducing power sector pollution and other environmental contaminants. The Agency's PowerPoint was created in the context of informing the White House as to the Agency's current group thinking and then-developing strategies for regulating and reducing power sector emissions, and, additionally, providing the White House with an opportunity to comment on the implementation of new policy and regulatory actions at the start of a new presidential administration. The withheld information contains proposed strategies under consideration by the Agency and an analysis of the impact and efficacy of the Agency's potential actions.

46. Disclosure of the withheld information will result in foreseeable harm to the Agency's ability to openly discuss future policy and rulemaking. Plaintiff's requested disclosure will chill the free exchange of ideas between Agency employees and White House officials when identifying, analyzing, and discussing potential regulatory strategies for regulating power plants and environmental contaminants in the future. As captured in this Power Point, Agency staff members are currently able to freely express ideas, strategies, and considerations for the Agency's decisionmakers on reducing power sector pollution because those views are insulated from public scrutiny. The ongoing, internal deliberations about the potential strategies, advice, opinions, and recommendations that are withheld from the PowerPoint offer a window into the still-ongoing discussions surrounding the Agency's power sector strategy. Many of the same staff members involved in the development of these strategies outlined in this PowerPoint are still employed at the Agency and still working on the very projects discussed therein. Those staff members, along with others working on these projects, will be discouraged from actively discussing the strategies, options, or recommendations

outlined in the PowerPoint that support good decision-making as the Agency moves towards finalizing its decision on these approaches.

47. Disclosure of redacted portions of the PowerPoint will discourage free and open discussions among Agency staff members working on the specific regulatory strategies referenced in the PowerPoint. Thus, there is foreseeable harm to future Agency work on these specific strategies discussed in the PowerPoint. Additionally, disclosure of this information would set the precedent, writ large, that sensitive discussions surrounding the development of sensitive regulatory matters are not protected from release and will consequently impair the Agency's ability to effectively conceptualize, develop, analyze, and discuss regulatory strategies – chilling important Agency work and government decision-making. Additionally, release of the information would chill Agency staff members from frankly discussing the *weaknesses* of potential regulatory strategies and approaches for fear that such admissions of uncertainty would be used against us in litigation even if future development of the approach or regulatory strategy led us to bolster the record and our confidence in the approach.

48. Furthermore, disclosure of the withheld information would lead to significant public confusion about whether the regulatory strategies and rulemakings discussed in the PowerPoint reflect the Agency's final policies and positions. Given that the PowerPoint contains goals and contemplated future actions that may be taken by the Agency, there is substantial potential for these propositions to be inaccurately construed by the public as future commitments, past actions, or provisions already in place.

49. Were the PowerPoint to be released, Agency employees would be deterred from openly strategizing about the regulation of harmful contaminants or pollution for fear of

creating public confusion or being subject to public ridicule. As a result, the ability of Agency staff to collaborate fully with Agency decision-makers and senior White House advisors would be significantly hindered and would undermine the integrity of the rulemaking process. Given the above-mentioned considerations, based on my review of the information at issue and my discussions with knowledgeable personnel, I have determined that there is reasonably foreseeable harm as to the disclosure of information protected by the deliberative process privilege.

## SEGREGABILITY

50. As reflected in the *Vaughn* index, the Agency has conducted a line-by-line review of the record and determined that all segregable information has been released to Plaintiff. To the extent any of this withheld information contains facts, the facts reflect Agency deliberations. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning these records.

Pursuant to 28 U.S.C. § 1746, I hereby affirm under penalty of perjury that the foregoing declaration is true and correct.

Executed this 27th day of January, 2023.

JOHN SHOAFF
Digitally signed by JOHN SHOAFF
Date: 2023.01.27 15:49:41 -05'00'

John Shoaff, Director
Office of Air Policy and Program Support
Office of Air and Radiation
U.S. Environmental Protection Agency