IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ENERGY POLICY ADVOCATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-0298 (TJK) |
| | ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUR-REPLY BRIEF**

NOW COMES Energy Policy Advocates, and submits the following Sur-Reply Brief in Opposition to the Motion for Summary Judgment filed by the U.S. Environmental Protection Agency ("US EPA").

**I.      Introduction**

This case relates, at this stage, to redactions made to several slides of one PowerPoint presentation. The Environmental Protection Agency filed its Motion for Summary Judgment (ECF No. 16) on January 27, 2023. Plaintiff opposed that Motion on February 24, 2023 (ECF No. 17). The Agency filed its Reply (ECF No. 19) on March 24, 2023.

Energy Policy Advocates respectfully submits that the Agency raised certain arguments for the first time on Reply, and that new information became available to the Plaintiff on March 1, 2023, only after the Plaintiff had already filed its Opposition to Summary Judgment. This brief is confined to those narrow issues.

**II.     Recent Factual Developments**

On March 1, 2023, US EPA official Joseph Goffman testified before the United States Senate. In his testimony, he was asked to address the impact of recent Supreme Court

1

jurisprudence limiting the authority of the Environmental Protection Agency to regulate under the Clean Air Act. In that hearing, Senator Capito and Principal Deputy Assistant Administrator Goffman both addressed, at length, the Supreme Court's decision in *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587 (2022). In that case, the Supreme Court invalidated Agency overreach under Clean Air Act §111(d), holding that the Agency had no authority to implement the sort of emissions caps embodied in the now-defunct Clean Power Plan (discussed in PowerPoint Slide 8) and, more broadly, prohibited the Agency from declaring newfound powers in Clean Air Act or other statutory provisions to impose "climate" regulatory regimes absent express statutory authority. That discussion is directly relevant to the Agency's claims of "foreseeable harm" if more of its presentation, by Mr. Goffman, *to the White House Climate Office*, of using, e.g., air toxics standards (slide 6), solid waste regulations (slide 5) or regulation under the Regional Haze visibility program (Slide 6) as "climate" regimes becomes public.

 On March 24, 2023, the Environmental Protection Agency filed its Reply Brief in this Court. In that brief, the Agency made several expansive assertions of deliberations related to claimed authorities both generally and even specifically rebuffed by the U.S. Supreme Court. And the Agency simultaneously claimed that great harm would come from disclosure of deliberations that cannot, as a matter of settled law from the Supreme Court, materialize into policy.

 **III.** **Argument**

 To the extent that the Agency has agreed, in Congressional testimony, that the Supreme Court of the United States has rejected its expansive notions of regulatory authority, the Agency cannot "deliberate" regarding the adoption of facially unlawful policies while shielding such "deliberations" behind the protections of the Freedom of Information Act which were designed

to shield legitimate give-and-take of agency decision-making. But even assuming, arguendo, that the Agency could claim it was entitled to invoke the Deliberative Process Privilege for deliberations regarding policies which are foreclosed by binding precedent from the Supreme Court, the Agency cannot credibly claim foreseeable harm from disclosure of such deliberations.

This case relates at this stage to redactions of 8 pages of a PowerPoint presentation titled "Power Sector Strategy [on] Climate, Public Health [and] Environmental Justice." That PowerPoint set forth "proposed strategies" to impose a "Power Sector Strategy" agenda to the White House Climate Office. Defendant's Statements of Material Undisputed Facts, ECF No. 16-2, ¶¶ 24-32). The agenda would be implemented through "regulating and reducing power sector pollution." Shoaff Declaration, Exhibit A, p. 20. As the audience for this presentation affirms, this is a February 4, 2021, presentation about invoking the Clean Air Act and other statutory authorities implemented by the Agency to impose a "climate" agenda, to restrict the use of certain fuels through air emission and solid waste regulatory regimes.

In *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), decided June 30, 2022, the U.S. Supreme Court struck down the Agency's attempt to regulate greenhouse gases (GHGs), specifically carbon dioxide ($CO_2$), under the Clean Air Act's (CAA) Section 111, in its effort "to implement the needed shift in generation to cleaner sources" by using the CAA in a way that "would implement a sectorwide shift in electricity production from coal to natural gas and renewables." *Id*. This regulation, known as the "Clean Power Plan," was one of several Agency attempts in recent years to deploy CAA to restrict GHGs, particularly $CO_2$, by those described outcomes, none of which efforts passed judicial muster. As the Court noted, in striking down EPA's effort to do so through §111, "Prior to the Clean Power Plan, EPA had used Section 111(d) only a handful of times since its enactment in 1970." *Id*. (EPA cites and redacts its discussion of using

3

§111(d) to restrict GHGs on slide 8). The Environmental Protection Agency thus appears to be using Exemption 5 in this case to shield deliberations regarding a plan to usurp authority which the Supreme Court has held it does not have, under the Clean Air Act and even other statutes like the Resource Conservation and Recovery Act (RCRA)(slide 5).

Even assuming, *arguendo*, that the Agency can invoke Exemption 5 to shield such deliberations which it has no authority to actually pursue, the Agency must also show that the disclosure of such unlawful deliberations would cause harm to the Agency. This Court has held that "agencies must make two showings. First, the agency must, as always, show that a FOIA exemption applies to withheld information… Second, the agency must articulate, in a 'focused and concrete' way, the harm that would result from disclosure, including the basis and likelihood of that harm … An agency's failure to make both showings warrants disclosure." *Reporters Comm. for Freedom of the Press v. United States Customs & Border Prot.*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021) (internal quotations and citations omitted). Plaintiff respectfully submits that in light of the Supreme Court's holding in *West Virginia*, there can be no foreseeable harm to the agency's regulatory efforts from revealing its previous plans to regulate, which plans it has now been forced to abandon due to rulings from the Supreme Court of the United States.

IV.   Conclusion

For the reasons set forth herein, and in Plaintiff's Opposition Brief (ECF No. 17), Plaintiff respectfully submits that this Court should deny the Environmental Protection Agency's Motion for Summary Judgment (ECF No. 16).

Respectfully submitted this the 10th day of April, 2023,

ENERGY POLICY ADVOCATES

**By Counsel:**

                /s/Matthew D. Hardin
                Matthew D. Hardin, D.C. Bar No. 1032711
                Hardin Law Office
                1725 I Street NW, Suite 300
                Washington, DC 20006
                Phone: 202-802-1948
                Email: MatthewDHardin@protonmail.com