**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENERGY POLICY ADVOCATES,<br><br>*Plaintiff*,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Defendant*. | Civil Action No. 22-298 (TJK) |

**MEMORANDUM OPINION**

Plaintiff filed a Freedom of Information Act request seeking information about the Environmental Protection Agency's work regarding air-quality standards. The EPA produced some responsive material, but it withheld eight slides of a PowerPoint presentation that it argues are protected from disclosure by Exemption 5's deliberative-process privilege. Plaintiff disagrees. The EPA now moves for summary judgment. Because it has shown that the deliberative-process privilege applies, the Court will grant that motion and enter judgment in its favor.

## I. Background

Plaintiff's request under FOIA, 5 U.S.C. § 552, seeks

> all electronic correspondence, whether email, text, SMS, etc., and any accompanying information, including also any attachments, a) sent to or from or which copies (whether as cc: or bcc:) i) Campbell.Ann@epa.gov and/or ii) rakosnik.delaney@epa.gov, that b) was also sent to or from or which copies (again, whether as cc: or bcc:) or mentions, anywhere, National Climate Advisor Gina McCarthy (including "Gina" and/or "McCarthy"), that also c) includes, anywhere, the following terms: i) "CO2", ii) "NAAQS", iii) "GHG" (including in "GHGs"), and/or iv) "Paris", and d) is dated January 21, 2021 through the date you process this request, inclusive.

ECF No. 20 ¶ 1. A few months later, the EPA told Plaintiff it needed more time to respond because of unusual circumstances and the need for inter-agency review. *Id.* ¶¶ 4–5. It then produced three

documents—two essentially without redaction, and a third subject to a more substantive withholding. *See id.* ¶¶ 7–9, 13–15.

Plaintiff's challenge focuses on the third document. That document is an eleven-slide PowerPoint presentation dated February 4, 2021, and titled "Power Sector Strategy: Climate, Public Health, Environmental Justice: The Building Blocks." ECF No. 20 ¶ 9. EPA officials[1] created the presentation and used it to brief White House officials[2] about potential strategies the EPA was considering for regulating power-plant pollution. *See* ECF No. 16-3 ¶ 9. Part of the purpose of that presentation was to allow White House officials to ask EPA officials questions and to comment on the plans being considered. *See id.*

The EPA thus withheld some of the presentation's text, asserting the deliberative-process privilege under FOIA Exemption 5. ECF No. 20 ¶ 13; 5 U.S.C. § 552(b)(5). Plaintiff asked the EPA to reconsider. ECF No. 20 ¶ 16. It partially did so, producing more information on three occasions. *Id.* ¶ 17. But in the end, it refused to budge on redactions to eight pages. *See id.* ¶ 20. It gave Plaintiff an informal *Vaughn* index to explain those withholdings. *See id.* ¶ 19.

Unsatisfied, Plaintiff filed this case. *See* ECF No. 1. The EPA now moves for summary judgment. ECF No. 16. It relies on the declaration of John Shoaff, the EPA's Director of the Office of Air Policy and Program Support within the Office of Air and Radiation. *See* ECF No. 16-3 ("Shoaff Decl."). Plaintiff opposes the EPA's motion. ECF No. 17. With that opposition, it filed a counterstatement of material facts, ECF No. 17-1, that it later moved to amend, ECF

---

[1] Those officials included Joe Goffman, then the Principal Deputy Assistant Administrator of the EPA's Office of Air and Radiation. ECF No. 16-3 ¶ 9.

[2] Goffman briefed two officials with the White House Office of Domestic Climate Policy—Gina McCarthy, then the National Climate Advisor, and Ali Zaidi, then the Deputy National Climate Advisor. ECF No. 16-3 ¶ 9.

No. 18. On Plaintiff's representation that the amendment did "not materially alter the posture of the case," *id.* at 2, the Court granted that motion, *see* Min. Order of Mar. 23, 2023. The EPA then filed a reply supporting its summary-judgment motion. ECF No. 19. That filing prompted Plaintiff to move for leave to file a surreply, which it said is appropriate because recent testimony before Congress bears on the propriety of the EPA's withholdings. *See* ECF No. 21. The EPA opposes that motion. ECF No. 22.

## II. Legal Standard

A movant is entitled to summary judgment by showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is not genuine if insufficient evidence supports one of its sides. *See Eddington v. DOD*, 35 F.4th 833, 836–37 (D.C. Cir. 2022). A movant negates a genuine dispute by demonstrating the inadequacy of the nonmoving party's evidence on that point. *See Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015). A dispute is material if it matters under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). So a movant negates a material dispute by demonstrating that the point is "irrelevant or unnecessary" to resolving the legal issues. *See Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quotation omitted). Applying both those principles, a court should enter summary judgment for a movant if no reasonable jury could find for the nonmovant based on the evidence construed in the light most favorable to the nonmovant. *See Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A). If the agency invokes one of those exemptions, it "bears the burden of demonstrating [that it] applies." *Schaerr*

*v. DOJ*, 69 F.4th 924, 929 (D.C. Cir. 2023). To satisfy that burden, the agency can: (1) produce a Vaughn index,[3] and (2) produce corresponding "affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail." *Waterman v. IRS*, 61 F.4th 152, 158 (D.C. Cir. 2023) (quotation omitted).

The agency is entitled to summary judgment if the *Vaughn* index and affidavits "show, with reasonable specificity, why the [requested] documents fall within the exemption." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quotation omitted). Moreover, the Court must presume that agency affidavits are submitted in good faith. *See In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020). Under that presumption, such affidavits are enough to satisfy the factual component of an agency's request for summary judgment unless the affidavit is "contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). By this procedure, the "vast majority of FOIA cases" are decided on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III. Analysis

The EPA has established that FOIA Exemption 5—and more specifically, the deliberative-process privilege—applies to the challenged withholding. Thus, it is entitled to summary judgment. The Court will also deny Plaintiff's motion for leave to file a surreply as procedurally improper and unnecessary.

### A. The Deliberative-Process Privilege Applies

FOIA Exemption 5 permits agencies to withhold either "inter-agency or intra-agency

[3] A *Vaughn* index "correlates all withholdings with specific FOIA exemptions and the agency's specific nondisclosure justifications." *Pub. Citizen v. HHS*, 66 F. Supp. 3d 196, 200 n.2 (D.D.C. 2014) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).

memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). That exemption incorporates various privileges agencies enjoy in civil litigation, including the deliberative-process privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). The deliberative-process privilege "shields from disclosure documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* (quotation omitted). It recognizes that "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* (quotation omitted). The privilege thus helps avoid forcing agencies "to operate in a fishbowl" and to "blunt[ ] the chilling effect that accompanies the prospect of disclosure" by "encourag[ing] candor, which improves agency decisionmaking." *Id.* (quotations omitted).

To assert the privilege, the EPA must show that the eight slides are (1) either inter-agency or intra-agency records,[4] that they are (2) "predecisional"[5] and (3) "deliberative,"[6] and that (4) "the agency reasonably foresees that disclosure would harm an interest protected by" Exemption 5.[7] As explained below, the EPA has done so.

**1. The Slides Are Inter- and Intra-Agency Documents**

Plaintiff does not seem to contest the first element—that the slides are inter- or intra-agency records. FOIA generally defines an "agency" as an "an authority of the Government of the United

[4] *See Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005).

[5] *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).

[6] *Machado Amadis*, 971 F.3d at 370.

[7] *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021); *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019).

States," including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C §§ 551(1), 552(f)(1). And even apart from that definition, entities that directly advise the President are protected by Exemption 5. *See Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d at 129; *Cause of Action Inst. v. U.S. Dep't of Com.*, 513 F. Supp. 3d 116, 124–25 (D.D.C. 2021). Thus, the first element is "satisfied for communications exchanged between agencies and the Office of the President." *See Jud. Watch, Inc. v. CFPB*, 60 F. Supp. 3d 1, 10 (D.D.C. 2014).

Here, senior EPA officials—no doubt members of an "executive department," *see* 5 U.S.C. § 552(f)(1)—prepared the slides. ECF No. 16-3 ¶ 9. And they prepared those slides for a presentation to the White House Office of Domestic Climate Policy. *Id.* To the extent the slides were used for "wholly internal" discussions at the EPA about "potential policies and strategies under consideration by Agency decision-makers," *id.* 16-3 ¶¶ 9, 18, they qualify as intra-agency records. To the extent they were used to communicate between the EPA and the White House, *id.* ¶ 9, they qualify as inter-agency records.

**2. The Slides Are Predecisional**

Next, the EPA must establish that the slides are predecisional. That means they were "'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). Thus, a document qualifies if it was "generated before the adoption of an agency policy." *See Jud. Watch, Inc. v. DOD*, 847 F.3d 735, 739 (D.C. Cir. 2017) (quotation omitted). Even so, a document can be predecisional even if "nothing else follows it" because "[s]ometimes a proposal dies on the vine." *Sierra Club, Inc.*, 141 S. Ct. at 786. So the question is not whether a record proceeds a

final policy, but "whether the agency treats the document as its final view on the matter" such that the document has "real operative effect." *See id.* (quotation omitted).

The EPA has shown that the slides meet those criteria. Its declarant details how the slides explore potential regulatory actions. *See* Shoaff Decl. ¶¶ 21, 24, 27, 30, 33, 36, 39, 42.[8] None of those contemplations, the EPA says, reflects its final decisions on those matters. *See id.* ¶¶ 22, 25, 28, 31, 34, 37, 40, 43. That representation's credibility is bolstered by the timing of the presentation—just a few weeks into a new presidential administration—and the fact that its title references "Building Blocks" of a power-sector strategy. *See id.* ¶ 9; ECF No. 20 ¶ 9.

Plaintiff's contrary argument lacks legal foundation. It claims the EPA has not identified a particular "'decision' that was being contemplated or that was thereafter made." ECF No. 17 at 6. No matter—a "writer does not know at the time of writing whether the draft will evolve into a final document. But the writer needs to know at the time of writing that the privilege will apply and that the draft will remain confidential, in order for the writer to feel free to provide candid analysis." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). As the Court has already explained, not only does the EPA have no obligation to identify a particular final decision supported by the predecisional material, but there need not even *be* a subsequent final decision. *See Citizens for Resp. & Ethics in Wash. v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022); *Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, 521 F. Supp. 3d 64, 78 (D.D.C. 2021). Instead, the EPA's burden is to establish "the role played by the documents at issue in the course of [its

---

[8] Specifically, slide 3 examines ways to regulate power-sector emissions; slide 5 discusses regulation of pollutants on land and in water; slide 6 weighs standards for reducing air emissions; slides 7 and 8 walk through provisions of the Clean Air Act that could be used to reduce power-sector emissions; slide 9 does the same for the "Regional Haze" program; slide 10 mulls regulation of coal-fired plants; and slide 11 ponders regulating emissions from new natural-gas units. *See* Shoaff Decl. ¶¶ 21, 24, 27, 30, 33, 36, 39, 42.

decisionmaking] process.'" *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

The EPA has done that. It says the redacted material was used "to brief the White House on potential policies and strategies under consideration by Agency decision-makers for regulating power plant pollution, and to provide the White House with an opportunity to share questions and comments on the Agency's potential regulatory strategies for the power sector." Shoaff Decl. ¶ 9. That "account of the relevant decisionmaking process" establishes the documents' "role" and "plainly establishes their predecisional nature." *See Cause of Action Inst.*, 521 F. Supp. 3d at 78.

Not only does the EPA's account make common sense, but it is entitled to the presumption of good faith. Plaintiff has not provided any "contrary evidence" or anything to suggest "the agency's bad faith." *ACLU v. DOD*, 628 F.3d at 619.[9] Thus, the EPA has met its burden to show that the slides are predecisional.

**3. The Slides Are Deliberative**

The story is similar for the slides' deliberative nature. That element encompasses documents that "reflect[ ] the give-and-take of the consultative process." *See Jud. Watch, Inc. v. DOD*, 847 F.3d at 739 (alteration in original) (quotation omitted). Such documents "contain the type of

[9] Plaintiff argues that the Shoaff declaration "appears to be based in large part on hearsay," which it thinks "must be disregarded." ECF No. 17 at 8–9. Plaintiff is mistaken. Shoaff represents that the information he asserts is "based on [his] personal knowledge" he "acquired . . . from staff and colleagues through the performance of [his] official duties, and upon conclusions reached and determinations made based upon that information." Shoaff Decl. ¶ 2. That information-gathering process "does not constitute hearsay in the FOIA context." *ACLU v. Fed. Bureau of Prisons*, No. 20-CV-2320 (RBW), 2022 WL 1262112, at *5 (D.D.C. Apr. 28, 2022). "FOIA declarants may rely on information they have obtained in the course of their official duties." *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 510 (D.D.C. 2015) (quotation omitted) (collecting cases). This is, at most, a case in which an agency declarant's testimony is "based upon information gleaned from personal familiarity with agency practices or from information relayed by other agency personnel," not one where the declarant relies "on out-of-court statements by private third parties." *See Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 49–50 (D.D.C. 2021).

back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve the undercover policy that sits at the heart of the deliberative process privilege." *Reps. Comm.*, 3 F.4th at 364. Thus, the EPA's burden on this score is to show "(1) what deliberative process is involved, and (2) the role played by the documents in issue." *Jud. Watch, Inc. v. DOJ*, 20 F.4th 49, 55 (D.C. Cir. 2021) (cleaned up). The relevant factors may also include "(3) the nature of the decisionmaking authority vested in the officer or person issuing the disputed document, and (4) the relative positions in the agency's chain of command occupied by the document's author and recipient." *Id.* (cleaned up). The EPA has met its burden on the first two factors, and the latter two are immaterial here.

The first two factors go hand in hand in this context. The EPA explains that it sought to "develop" "several potential strategies and paths forward for regulating power sector pollution" and to "obtain feedback" from the White House about those matters. *See* Shoaff Decl. ¶ 17. It also details the role each slide played in that process. *See id.* ¶¶ 23, 26, 29, 32, 35, 38, 41, 44. In service of its goal of getting feedback, the presentation "contains internal analysis of the relative strengths and weaknesses of each approach." *Id.* ¶ 17. And the context here is critical—again, the presentation happened a few weeks into a new presidential administration, *see id.*, a time of heightened need for actors in the Executive Branch to establish policy priorities and discern whether they are on the same page. Given the EPA's representations here, the Court has no trouble concluding that the first two factors show that the slides reflect the "give-and-take of the consultative process," *Jud. Watch, Inc. v. DOD*, 847 F.3d at 739 (quotation omitted), and "were prepared to help the agency formulate its position," *see Sierra Club, Inc.*, 141 S. Ct. at 786.

The third and fourth factors add little to the analysis in this context. As the EPA acknowledges, there is "no direct hierarchical relationship" between the EPA official and the White House

officials to whom he presented the material. ECF No. 16-1 at 23. Plaintiff seizes that concession, noting that the EPA "admits that the PowerPoint was not created by a subordinate making recommendations to a superior, but was instead created to 'brief' employees of a different agency with no direct supervisory authority." ECF No. 17 at 8. It thus seems to contend that a subordinate relationship between the author of material and its recipient is necessary for the material to be considered deliberative. *See id.* at 6.

Not so. True, records sent from a "subordinate" to a "superior" are "*more likely* to be deliberative . . . than documents traveling in the opposite direction." *Senate of P.R. v. DOJ*, 823 F.2d 574, 586 (D.C. Cir. 1987) (emphasis added) (quoting *Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983)). But there is no "directional precondition to protection under the deliberative process privilege." *Reps. Comm.*, 3 F.4th at 364. Instead, this factor recognizes the reality that a document descending an agency's hierarchy is "is more likely to contain instructions to staff explaining the reasons for a decision already made." *See id.* (quotation omitted). Thus, courts should, when applicable, consider the hierarchical roles of a record's authors and readers, but they do so only to help answer the overall question: is the document "part of the give-and-take of the consultative process." *See id.* (quotations omitted).

Not only does the context here show that the slides were part of such a process, as the Court has already explained—but there *is* no meaningful hierarchical relationship present here. Both parties agree on that. So the third and fourth factors do not "assist the court in determining whether the privilege is available." *See Jud. Watch, Inc. v. DOJ*, 20 F.4th at 55 (cleaned up). Plaintiff's arguments to the contrary fail to engage with the nature of the records and the circumstances surrounding their creation. *Cf. A.B. v. DOJ*, No. 19-CV-598 (CJN), 2021 WL 1061161, at *5 (D.D.C. Mar. 19, 2021) (concluding that documents were deliberative even though they were "a

decisionmaker's communications to a subordinate").

As a last-ditch effort, Plaintiff suggests that documents used to "brief the White House" cannot be deliberative because briefing is different from "weigh[ing], internally or with some other agency, the merits and demerits of a particular decision." *See* ECF No. 17 at 8. Plaintiff cites no legal or other authority for this half-baked assertion. The EPA represents that the presentation explicitly weighed the merits of various strategies and was prepared in part to solicit feedback from the White House about them. *See* Shoaff Decl. ¶ 17. Again, Plaintiff has not provided any "contrary evidence" or anything to suggest "the agency's bad faith." *ACLU v. DOD*, 628 F.3d at 619. Besides, it hardly takes imagination to surmise why an agency might solicit feedback from the White House about policies with far-reaching economic and social impacts in the earliest weeks of a nascent administration as part of its own deliberative process. The EPA has met its burden to show that the slides are deliberative.

**4. Foreseeable Harm**

Finally, the EPA has shown that it reasonably foresees harm from disclosing the slides. Its burden is to make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370. Harms protected in the context of the deliberative-process privilege include chilling "candid discussions within an agency," causing "public confusion from premature disclosure of agency opinions before the agency established its final policy," and protecting "the integrity of an agency's decision." *Huthnance v. District of Columbia*, 268 F.R.D. 120, 122 (D.D.C. 2010) (quotations omitted); *see also, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of State*, 557 F. Supp. 3d 52, 64 (D.D.C. 2021) (candor); *Pub. Emps. for Env't Resp. v. DHS*, 575 F. Supp. 3d 34, 51–52 (D.D.C. 2021) (public confusion).

The EPA has satisfied its burden to show foreseeable harm in two ways. First, it explains

that disclosure of the eight slides would hinder EPA officials' candor in future policy discussions. Shoaff Decl. ¶¶ 46–47. The information's public release, it predicts, "will chill the free exchange of ideas between Agency employees and White House officials" considering and evaluating "potential regulatory strategies for regulating power plants and environmental contaminants in the future." *Id.* ¶ 46. EPA employees can offer their unfiltered views of internal strategy proposals—including those captured in the slides on reducing power-sector pollution—because they understand those views will be "insulated from public scrutiny." *Id.* The slides' release particularly jeopardizes this collaborative environment because many employees who contributed to the slides still work for the EPA. *Id.* Thus, the release would encourage those employees (and others) to think twice before expressing their views internally. The deliberative-process privilege aims to avoid such second guessing.[10]

Second, the EPA describes the public confusion that would likely result from disclosing the slides. As explained above, the slides contain various proposed strategies and alternatives. If disclosed, the public could mistake those proposals for "future commitments, past actions, or provisions already in place." Shoaff Decl. ¶ 48. The consequences of such public confusion would be pronounced here, the EPA explains, given the complex, controversial, and sensitive nature of its regulation of power-plant emissions. ECF No. 16-1 at 27–28. The Court agrees. *See Pub. Emps. for Env't Resp.*, 575 F. Supp. 3d at 52 (noting that "the risk of public confusion 'has a special force with respect to disclosures of agency positions or reasoning concerning proposed

[10] *See Sierra Club, Inc.*, 141 S. Ct. at 785 ("[O]fficials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." (quotation omitted)); *see also, e.g.*, *Emuwa v. DHS*, No. 20-CV-1756 (TNM), 2022 WL 1451430, at *3 (D.D.C. May 9, 2022) (finding agency carried its foreseeable-harm burden by showing the disclosure of the withheld information "would chill future internal discussions" and "impede agency deliberation in a 'specific context'" (quotations omitted)).

policies'" (quotation omitted)).

Moreover, Plaintiff's opposition does not even mention foreseeable harm.[11] *See generally* ECF No. 17. Thus, the Court may treat this factor as conceded. *See Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002).

* * *

For all these reasons, the EPA's affidavit "show[s], with reasonable specificity, why the [requested] documents fall within the exemption." *See Evans*, 951 F.3d at 583. And so the EPA is entitled to summary judgment.[12]

**B. Plaintiff May Not File a Surreply**

Plaintiff also moves for leave to file a surreply to the EPA's reply supporting its motion for summary judgment. ECF No. 21. Without citing any legal authority, Plaintiff says it should be permitted to do so for two reasons. First, it thinks the EPA made new arguments in reply that it should be permitted to address. *See id.* at 1. Second, it says the main author of the slides recently testified before Congress, a development it says is relevant to the foreseeable-harm element the

[11] Plaintiff does mention this factor in documents it filed after its initial opposition, but the Court will not consider that material for the reasons explained below.

[12] Plaintiff asks the Court to review the slides *in camera*. ECF No. 17 at 10–11. It says only then "will this Court truly be able to assess whether the vague and generalized assertions of deliberations in Mr. Shoaff's declaration are borne out in the document itself." *Id.* at 11. No doubt, the Court has the power to review contested records *in camera*. *See Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (citing 5 U.S.C. § 552(a)(4)(B)). But "it is not necessary for district courts to [do so] in every FOIA case." *Evans*, 951 F.3d at 588. Such inspections, in fact, "*should not* be resorted to as a matter of course." *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (emphasis added). Thus, where custodial agencies have met their summary-judgment burden by affidavits, "*in camera* review is neither necessary nor appropriate." *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (quotation omitted). As the Court has just explained, that is true here. And Plaintiff offers no basis for concluding this is an "exceptional case" where *in camera* review is necessary. *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (quotation omitted). Thus, the Court declines to review the slides *in camera*.

Court discussed above. *See id.* at 2. Neither claim holds up, so the Court will not consider the material it presented after its opposition, ECF No. 17.

Surreplies are generally disfavored. *Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010). But district courts have discretion to grant or deny their filing. *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012). They should consider "whether the movant's reply in fact raises arguments or issues for the first time; whether the non-movant's proposed surreply would be helpful to the resolution of the pending motion; and whether the movant would be unduly prejudiced were leave to be granted." *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011). But "when arguments raised for the first time in reply fall within the scope of the matters the opposing party raised in opposition, and the reply does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate." *Anand v. HHS*, No. 21-CV-1635 (CKK), 2022 WL 18911137, at *1 (D.D.C. Nov. 15, 2022) (cleaned up).

This case's procedural history explains why Plaintiff is wrong on its first point. In support of its opposition, Plaintiff filed a response to the EPA's statement of undisputed facts. *See* ECF No. 17-1. But it then came to believe that the Court's standing order required that document to be filed using different formatting. *See* ECF No. 18 at 1.[13] So it moved for leave to refile that statement of material facts using different formatting, representing that its doing so would "not materially alter the posture of the case." *Id.* at 2.

Yet when it filed that new document, it slipped in new material. Its first filing objected to the EPA's statement that it had shown foreseeable harm on the grounds that it was a conclusion,

[13] Consistent with its usual practice, the Court did not issue a standing order in this case because it presents only a FOIA claim. The parties did not have to follow orders issued in other cases, whether or not they can be found on the Court's website.

that it was based on hearsay, and that the declared facts did not support that conclusion. *See* ECF No. 17-1 ¶ 38. In its "reformatted" response, it appended to the same paragraph a lengthy argument that the Supreme Court's decision in *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), nullified any potential harm disclosure of the slides might otherwise have caused. *See* ECF No. 20 ¶ 38. The EPA noticed that insertion and responded to it on both procedural and merits grounds. *See* ECF No. 19 at 10 n.4 ("Plaintiff has advanced a new, untimely argument . . . ."). And it is *those* arguments that Plaintiff claims *the EPA* made for the first time in its reply. *See* ECF No. 21 at 1. Its proposed surreply brief is largely about the supposed impact of *West Virginia v. EPA* on this case. *See generally* ECF No. 21-4.

Thus, it simply is not true that the EPA raised new arguments in its reply. Thus, there is no "fairness" interest in allowing Plaintiff to further respond. *Contra* ECF No. 21 at 1. At a minimum, what the EPA said fell "within the scope of the matters the opposing party raised"—timely or otherwise—"in opposition and [so did] . . . not expand the scope of the issues presented." *Anand*, 2022 WL 18911137, at *1.

Second, Plaintiff's supposed development is a red herring. It claims the author of the slides recently testified before Congress about *West Virginia v. EPA*. *See* ECF No. 21-4 at 2–3. And that testimony, it explains, "was only published after [its] initial Opposition in this matter." ECF No. 21 at 2. Despite that vague reference, the Court cannot glean what relevance Plaintiff thinks the testimony has here. Sure, Plaintiff attaches the full seventy-nine pages of it, but its proposed brief does not cite or quote a single word.[14] Instead, Plaintiff's argument seems to hinge on *its*

[14] *Cf. Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009) ("[E]vidence laying dormant in the record is not enough, for the district court is not obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material disputed fact.'" (quotation omitted)).

interpretation of *West Virginia v. EPA*—a decision that was published nearly eight months before Plaintiff filed its opposition. *See* ECF No. 17; ECF No. 21-4 at 3–5 ("The [EPA] thus appears to be using Exemption 5 in this case to shield deliberations regarding a plan to usurp authority which the Supreme Court has held it does not have . . . ."). Regardless of the merits of that argument, Plaintiff could have made it timely.

For those reasons, Plaintiff has failed to show that fairness requires the Court to permit it to file a surreply or that the surreply would advance arguments useful to resolving this matter. Thus, the Court will deny its motion.

## IV. Conclusion

For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Leave to File Sur-Reply Brief. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 29, 2023